**2024 IL 129201**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

––––––––––––––

(Docket No. 129201)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RYAN SHAVOR DON REDMOND, Appellee.

*Opinion filed September 19, 2024.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

## OPINION

¶ 1    In this case we must determine, after the recent changes to Illinois's cannabis laws, whether a police officer's detection of the odor of burnt cannabis, considered alone or in conjunction with other facts, provides probable cause to conduct a warrantless search of a vehicle. Illinois State Police officer Hayden Combs

conducted a search of Ryan Redmond's vehicle based on, *inter alia*, his detection of the strong odor of burnt cannabis emanating from the vehicle. The State primarily argues that Combs had probable cause to suspect that a search of the vehicle would uncover evidence that cannabis was improperly contained in the vehicle or, more likely, uncover evidence that Redmond had used cannabis on his trip from Des Moines to Chicago. See 625 ILCS 5/11-502.15(a) (West 2020) ("No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State."). Combs searched Redmond's car and found one gram of cannabis inside the center console in a plastic bag.

¶ 2         The State charged Redmond with unlawful possession of cannabis in violation of section 4 of the Cannabis Control Act (Control Act) (720 ILCS 550/4(a) (West 2020)) and unlawful possession of cannabis by a driver in violation of section 11-502.15(b) of the Illinois Vehicle Code (625 ILCS 5/11-502.15(b) (West 2020)). Redmond filed a motion to suppress the cannabis. The Henry County circuit court granted the motion, and the appellate court affirmed, holding that recent changes to the law pertaining to cannabis made the odor of burnt cannabis, standing alone, insufficient to justify a warrantless search of an automobile. 2022 IL App (3d) 210524, ¶ 21.

¶ 3         We allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). We also allowed the American Civil Liberties Union, ACLU of Illinois, National Association of Criminal Defense Lawyers, and the Illinois Association of Criminal Defense Lawyers to file an *amici curiae* brief on behalf of Redmond's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the following reasons, we affirm the judgment of the appellate court.

¶ 4                                          I. BACKGROUND

¶ 5         On September 15, 2020, Officer Combs saw a car with an improperly secured license plate traveling at a speed of 73 miles per hour in a 70-mile-per-hour zone on Interstate 80 in Henry County. Combs initiated a traffic stop of Redmond's vehicle. Combs approached on the passenger side, and when Redmond rolled down the passenger-side window, Combs smelled burnt cannabis. According to the complaint, Combs searched Redmond's car and found one gram of cannabis in the

center console in a plastic bag.

¶ 6                                    A. Circuit Court

¶ 7         On June 29, 2021, Redmond filed a motion to suppress the evidence—the cannabis—the police found in his car. The court heard the motion on August 4, 2021.

¶ 8         At the hearing on the motion, Combs testified that he stopped Redmond because his vehicle was travelling at 73 miles an hour in a 70-mile-per-hour zone (see 625 ILCS 5/11-601(f)(1.5) (West 2020) (setting the "maximum speed limit" at "70 miles per hour upon any interstate highway")) and the vehicle had an improper display of registration (see *id.* § 3-413(b) (West 2020) ("every registration plate or digital registration plate shall at all times be securely fastened in a horizontal position to the vehicle")).[1] When Combs approached, he smelled the odor of burnt cannabis emitting from the vehicle. During the State's examination, Combs testified that the odor was very strong. Combs also testified he asked Redmond about the odor and Redmond denied having smoked cannabis in the vehicle.

¶ 9         Combs's examination of the vehicle did not reveal anything that was lit or currently emitting the odor of cannabis from the vehicle. Combs also agreed that he did not see any cannabis in plain view. Combs had Redmond step out of his vehicle and seated him in the squad car. With Redmond out of his vehicle, Combs could still smell the odor of burnt cannabis in the vehicle, but he could not recall smelling the odor of burnt cannabis on Redmond's person. Combs admitted he saw no signs of impairment when he spoke to Redmond.

¶ 10        Redmond did not produce his license and registration. Using information obtained from Redmond, Combs retrieved a record showing that Redmond had a valid Illinois license with a Chicago address. Combs testified that Redmond failed to give a straight answer to questions about where he lived, but Combs admitted Redmond said he lived in Chicago and had stayed with a friend in Des Moines.

---

[1]Redmond has not contested the validity of the stop in any court, and thus, we do not analyze the validity of the stop in this case.

¶ 11    Combs testified that he searched the car because there was an odor of burnt cannabis, Redmond gave evasive answers, Interstate 80 was "a known drug corridor," and Redmond admitted he was driving from Des Moines to Chicago, where both cities are "hub[s] of criminal activity." Combs's search uncovered approximately one gram of cannabis in the center console in a plastic bag.

¶ 12    In an order dated November 10, 2021, the circuit court granted the motion to suppress, finding Combs lacked probable cause for the warrantless search. The court first noted what was not present during the stop; namely, Combs did not observe any signs of impairment or signs indicative of recent cannabis use. Combs also did not observe any paraphernalia, loose or unpackaged cannabis, or the odor of raw cannabis coming from the vehicle. The circuit court found that "nothing" about Redmond's "living arrangement, travel plans, or travel route add[ed] to the likelihood that [he] was engaged in criminal conduct." As to the odor of burnt cannabis, the circuit court found that, because the smell of burnt cannabis could persist even if possessed and used wholly within the bounds of Illinois law, the smell of burnt cannabis standing alone could not constitute probable cause for a warrantless vehicle search.

¶ 13    On November 10, 2021, the State filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017) with a certificate stating that the order substantially impaired its prosecution of the case. See *People v. Truitt*, 175 Ill. 2d 148, 151-52 (1997).

¶ 14                              B. Appellate Court

¶ 15    The appellate court held that " 'the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle.' " 2022 IL App (3d) 210524, ¶ 21 (quoting *People v. Stribling*, 2022 IL App (3d) 210098, ¶ 29). The appellate court, like the trial court, pointed out the absence of evidence supporting the search. *Id.* ¶ 22 ("Redmond did not delay pulling over or make any furtive movements, he rolled down the window when Combs came to the passenger side of the vehicle, and Combs did not observe any cannabis or related drug paraphernalia in the vehicle, smoke in the vehicle, or signs of impairment in Redmond.").

¶ 16    The court also found a lack of evidence supporting Combs's testimony that Interstate 80 was a known drug corridor and that Des Moines and Chicago were hubs of criminal activity. *Id.* ¶¶ 23-24. Both facts were unrelated to and unsupportive of Combs's suspicion that Redmond had smoked cannabis in the vehicle. *Id.* The appellate court affirmed the circuit court's judgment suppressing the cannabis seized in the warrantless search of Redmond's car. *Id.* ¶ 26.

¶ 17    This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 18                                    II. ANALYSIS

¶ 19    The sole issue before this court is whether Officer Combs had probable cause to search Redmond's vehicle after Combs smelled the odor of burnt cannabis coming from the vehicle. The State argued in its brief that "where the officer detected the strong odor of burnt cannabis—a reasonable officer was justified in suspecting either a violation of the odor-proof transportation requirement or, perhaps more likely, the prohibition on the use of cannabis within a vehicle." Redmond responds that, after the legislature legalized the use and possession of cannabis, the odor of burnt cannabis emanating from a vehicle alone "lacks a clear and direct enough connection to illegal activity to make it 'probable' that a crime has recently been committed or is being committed."

¶ 20                                 A. Standard of Review

¶ 21    We review the trial court's ruling on the motion to suppress under the two-part standard enunciated by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 696-97 (1996). *People v. Hill*, 2020 IL 124595, ¶ 14. "Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether suppression is warranted is reviewed *de novo*." *People v. Salamon*, 2022 IL 125722, ¶ 75.

¶ 22                    B. Constitutional Prohibitions Against
                               Unreasonable Searches

¶ 23        The fourth amendment to the United States Constitution provides: "The right
of the people to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated, and no Warrants shall
issue, but upon probable cause ***." U.S. Const., amend. IV. The Illinois
Constitution similarly provides: "The people shall have the right to be secure in
their persons, houses, papers and other possessions against unreasonable searches
***. No warrant shall issue without probable cause ***." Ill. Const. 1970, art. I,
§ 6. "[S]earches conducted outside the judicial process, without prior approval by
judge or magistrate, are *per se* unreasonable under the Fourth Amendment—
subject only to a few specifically established and well-delineated exceptions." *Katz
v. United States*, 389 U.S. 347, 357 (1967).

¶ 24        One well-established exception is for searches of automobiles. See *Carroll v.
United States*, 267 U.S. 132, 156 (1925); *People v. Webb*, 2023 IL 128957, ¶ 24
("There are recognized exceptions to the general rule, however, including an
exception for searches of vehicles."). The automobile exception is justified because
of an automobile's "transient nature," which "often renders it impracticable to
secure a warrant before the automobile escapes the jurisdiction in which the warrant
must be sought." *Hill*, 2020 IL 124595, ¶ 21. "Under the automobile exception, law
enforcement officers may undertake a warrantless search of a vehicle if there is
probable cause to believe that the automobile contains evidence of criminal activity
that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994).


¶ 25                        C. Probable Cause to Search

¶ 26        Probable cause exists where the evidence known to the officer raises a "fair
probability that contraband or evidence of a crime will be found in a particular
place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); see *id.* at 243 n.13 ("[P]robable
cause requires only a probability or substantial chance of criminal activity, not an
actual showing of such activity."). "Whether the necessary probability exists is
governed by commonsense considerations that are factual and practical, rather than
by technical rules." *People v. Manzo*, 2018 IL 122761, ¶ 30. "[P]robable cause does
not require an officer to rule out any innocent explanations for suspicious facts."

*Hill*, 2020 IL 124595, ¶ 24. "Instead, it requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability" that a search of the automobile will uncover contraband or evidence of criminal activity. *Id.* "A court must examine the events leading up to the search or seizure, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable law enforcement officer, amount to probable cause." *People v. Jones*, 215 Ill. 2d 261, 274 (2005).

¶ 27                            D. Evolution of Cannabis Law

¶ 28        Because cannabis law has changed drastically over the last decade, we briefly address the evolution of statutes dealing with cannabis and the caselaw analyzing whether probable cause exists based on an officer's detection of the odor of cannabis coming from a vehicle. And because probable cause deals with the probability that a search will produce contraband or evidence of criminal activity, we address the state of cannabis laws at the time of the stop in September 2020.

¶ 29                      1. Pre-2013: All Cannabis Is Contraband

¶ 30        Prior to 1971, marijuana was classified as a narcotic and punished accordingly. See *People v. McCabe*, 49 Ill. 2d 338, 350 (1971) (*per curiam*) (observing that the legislature had recently removed marijuana from the purview of the Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, ¶ 22-1 *et seq.*)). In 1971, the legislature enacted the Control Act. See Pub. Act 77-758, § 1 (adding Ill. Rev. Stat. 1971, ch. 56½, § 701 *et seq.*).[2] The Control Act provided: "It is unlawful for any person knowingly to possess cannabis." *Id.* § 704. The Control Act set penalties between a Class C misdemeanor for the possession of not more than 2.5 grams of any substance

---

[2]Among the legislative findings were that cannabis was "widely used and pervasive among the citizens of Illinois" and that previous laws on cannabis had "unnecessarily and unrealistically drawn a large segment of our population within the criminal justice system." Ill. Rev. Stat. 1971, ch. 56½, § 701. The General Assembly declared its intent to "establish a reasonable penalty system which is responsive to the current state of knowledge concerning cannabis and which directs the greatest efforts of law enforcement agencies toward the commercial traffickers and large-scale purveyors of cannabis." *Id.*

containing cannabis and a Class 3 felony for the possession of more than 500 grams of any substance containing cannabis. *Id.* § 704(a)-(e).

¶ 31    In *People v. Stout*, 106 Ill. 2d 77, 88 (1985), this court held that "additional corroboration" was not required to establish probable cause for a warrantless search "where a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle." The defendant had been pulled over for making an illegal turn. *Id.* at 81. As the officer approached the vehicle, he smelled the odor of "burning cannabis from inside the defendant's car." *Id.* at 87. We explained that a "police officer's detection of controlled substances by their smell has been held to be a permissible method of establishing probable cause." *Id.* This court added that the officer, "when confronted with circumstances which tended to indicate that criminal activity was taking place," had a duty "to investigate in order to determine whether such criminal activity in fact existed." *Id.*

¶ 32                    2. Legalization (Medical) and
                       Decriminalization Phase

¶ 33    In 2013, the General Assembly promulgated the Compassionate Use of Medical Cannabis Pilot Program Act (Medical Act). See Pub. Act 98-122, § 1 (eff. Jan. 1, 2014) (adding 410 ILCS 130/1 *et seq.*). The Medical Act made it lawful for certain individuals with debilitating medical conditions to possess and use cannabis. 410 ILCS 130/10(t), 25(a) (West 2014). Nevertheless, the Vehicle Code prohibited the use of cannabis in a motor vehicle (625 ILCS 5/11-502.1(a) (West 2014)), and if it was possessed in a motor vehicle, the cannabis was required to be stored in a "sealed, tamper-evident medical cannabis container" (*id.* § 11-502.1(b), (c)).

¶ 34    In 2016, the Control Act was amended, and the possession of not more than 10 grams of any substance containing cannabis was made a civil law violation with a minimum fine of $100 and a maximum fine of $200. 720 ILCS 550/4(a) (West 2018); see Pub. Act 99-697, § 40 (eff. July 29, 2016). Possession of more than 10 grams of a substance containing cannabis remained criminal, with penalties ranging from a Class B misdemeanor to a Class 1 felony. See 720 ILCS 550/4(b)-(g) (West 2018).

¶ 35        During the evolution of Illinois's cannabis laws—the legalization of medical cannabis and the decriminalization of the possession of small amounts of cannabis—this court decided *Hill*, 2020 IL 124595. In *Hill*, this court decided the propriety of a search that occurred on May 29, 2017. *Id.* ¶ 5. The defendant was pulled over based on the officer's belief that the passenger was a fugitive. *Id.* The defendant drove a few blocks before pulling over, which the officer testified was indicative of someone in the car concealing or destroying contraband or producing a weapon. *Id.* The officer approached the passenger side and immediately smelled the strong odor of raw cannabis. *Id.* The passenger admitted that he was a cannabis user and that he had smoked cannabis earlier that day. *Id.* ¶ 10. The officer also observed in plain view a "bud" in the back seat of the car. *Id.*

¶ 36        This court first declined to address the "narrow legal issue" of whether *Stout* remained good law because, unlike the officer in *Stout*, the officer relied on more than the odor of raw cannabis. *Id.* ¶¶ 16, 18. In a footnote we stated: "Although we do not reach whether the odor of cannabis, alone, is sufficient to establish probable cause, the smell and presence of cannabis undoubtedly remains a factor in a probable cause determination." *Id.* ¶ 18 n.2.

¶ 37        This court then analyzed the changes in Illinois's cannabis law. *Id.* ¶¶ 27-31. We rejected the defendant's argument that decriminalization of the possession of small amounts of cannabis affected the probable cause analysis because the possession of cannabis remained unlawful. See *id.* ¶ 31 ("the decriminalization of possessing small amounts of cannabis did not alter the status of cannabis as contraband"). Regarding the Medical Act, we noted that, "[w]hile the mere presence of cannabis for medical users may no longer be immediately attributable to criminal activity or possession of contraband, such users must possess and use cannabis in accordance with the [Medical] Act." *Id.* ¶ 34 (citing the Vehicle Code's requirement that a medical user must possess cannabis within a motor vehicle in a "sealed, tamper-evident medical cannabis container" (625 ILCS 5/11-502.1(b), (c) (West 2016))).

¶ 38        With the legal framework established, this court found that the officers had probable cause to search the defendant's vehicle based on the totality of the circumstances, including (1) the defendant's delay in pulling over and the officer's testimony that a delay often means the car's occupants are hiding contraband or

retrieving a weapon, (2) the passenger stating that he smokes cannabis and had done so that day, (3) the officer's observation of a loose "bud" in the back seat, and (4) the strong odor of raw cannabis, which, "together," indicated that cannabis was in the car and likely not properly contained. *Id.* ¶ 35. We then analyzed the case under standards we have used related to an officer's smell of alcohol because, like cannabis, "possession of alcohol is lawful under some circumstances but remains unlawful under other circumstances." *Id.* ¶ 36. We concluded that there was probable cause because, as the alcohol precedent instructed, there was some indicia of criminality in addition to the smell of cannabis. *Id.* ¶¶ 36-37.

¶ 39                    3. Public Act 101-27: Cannabis Act Amended and
                                    Regulation Act Enacted

¶ 40        On June 25, 2019, the General Assembly promulgated Public Act 101-27 (eff. June 25, 2019), which, along with Public Act 101-593, § 35 (eff. Dec. 4, 2019), amended the Control Act to provide: "Except as otherwise provided in the Cannabis Regulation and Tax Act and the Industrial Hemp Act, it is unlawful for any person knowingly to possess cannabis." *Id.* (amending 720 ILCS 550/4). The Control Act maintained the same penalty structure regarding the possession of cannabis: the possession of not more than 10 grams of a substance containing cannabis remained a civil law violation, and the possession of more than 10 grams was penalized ranging from a Class B misdemeanor to a Class 1 felony. See 720 ILCS 550/4(a)-(g) (West 2020).

¶ 41        In Public Act 101-27 (eff. June 25, 2019), the General Assembly also enacted the Cannabis Regulation and Tax Act (Regulation Act) (410 ILCS 705/1-1 *et seq.* (West 2020)), the most comprehensive and detailed legislation regarding the use and possession of cannabis in the State of Illinois. In what could be described as the legalization clause, section 10-5 of the Regulation Act provides:

> "Beginning January 1, 2020, notwithstanding any other provision of law, and except as otherwise provided in this Act, the following acts are not a violation of this Act and shall not be a criminal or civil offense under State law or the ordinances of any unit of local government of this State or be a basis for seizure or forfeiture of assets under State law for persons other than natural individuals under 21 years of age:

(1) possession, consumption, use, purchase, obtaining, or transporting cannabis paraphernalia or an amount of cannabis for personal use that does not exceed the possession limit under Section 10-10 or otherwise in accordance with the requirements of this Act[.]" *Id.* § 10-5(a)(1).

Section 10-10 of the Regulation Act defines the possession limit "for a person who is 21 years of age or older and a resident of this State" as "(1) 30 grams of cannabis flower; (2) no more than 500 milligrams of THC contained in cannabis-infused product; [and] (3) 5 grams of cannabis concentrate." *Id.* § 10-10(a)(1)-(3). [3] Pursuant to the Regulation Act, it is generally legal for an Illinois resident who is over the age of 21 to use cannabis and to possess up to 30 grams of cannabis. Thus, the Regulation Act provides an exception to the Control Act's prohibition against the possession of cannabis. Compare 720 ILCS 550/4 (West 2020), with 410 ILCS 705/10-5(a)(1), 10-10(a)(1)-(3) (West 2020).

¶ 42     Section 10-35 of the Regulation Act, titled "Limitations and penalties," provides that the Regulation Act

"does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for ***

     ***

(2) possessing cannabis ***

          * * *

(D) in a vehicle not open to the public unless the cannabis is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving[.]" 410 ILCS 705/10-35(a)(2)(D) (West 2020).

---

[3]The legislative findings for the Regulation Act include the following:
"In the interest of allowing law enforcement to focus on violent and property crimes, generating revenue for education, substance abuse prevention and treatment, freeing public resources to invest in communities and other public purposes, and individual freedom, the General Assembly finds and declares that the use of cannabis should be legal for persons 21 years of age or older and should be taxed in a manner similar to alcohol." 410 ILCS 705/1-5(a) (West 2020).

Section 10-35 also provides that the Regulation Act "does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for *** (3) using cannabis *** (D) in any motor vehicle *** [or] (F) in any public place." *Id.* § 10-35(a)(3)(D), (F). Thus, if an individual engages in the conduct described in section 10-35, the section 10-5 immunity provision is rendered inapplicable.[4]

¶ 43    The Vehicle Code, amended at the same time and in the same public act that created the Regulation Act, prohibits the use of cannabis in a vehicle upon a highway and restrains how an individual may possess cannabis within a vehicle. Pub. Act 101-27 (eff. June 25, 2019) (adding 625 ILCS 5/11-502.15). The Vehicle Code provides: "No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State." 625 ILCS 5/11-502.15(a) (West 2020). The Code also provides that "[n]o driver may possess cannabis within any area of any motor vehicle upon a highway in this State except in a sealed, odor-proof, child-resistant cannabis container." *Id.* § 11-502.15(b).[5]

¶ 44                    E. The Odor of Burnt Cannabis Alone
                    No Longer Establishes Probable Cause

¶ 45    After January 1, 2020, when the use and possession of cannabis was legalized in many instances, our appellate court has reached conflicting results in cases concerning the effect of legalization on probable cause for automobile searches. The Second District has held that the odor of burnt cannabis, standing alone, still justifies a warrantless search of an automobile. See *People v. Harris*, 2023 IL App (2d) 210697, ¶ 31 (holding that an officer that smells the strong odor of burnt cannabis coming from a vehicle has "probable cause to believe that cannabis is

---

[4]The use and possession of up to "30 grams of cannabis flower; *** no more than 500 milligrams of THC contained in cannabis-infused product; [and] *** 5 grams of cannabis concentrate" is not a criminal or civil offense under state law (410 ILCS 705/10-5(a)(1), 10-10(a)(1)-(3) (West 2020)), but section 10-35 of the Regulation Act removes its protection for the use of cannabis in a motor vehicle and the possession of cannabis in a motor vehicle "unless the cannabis is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving" (*id.* § 10-35(a)(2)(D), (3)(D)).

[5]Redmond does not contest the validity of the odor-proof container requirement. In People v. Molina, No. 129237 (Ill.), a case dealing with a police officer's detection of the odor of raw cannabis coming from a vehicle, we address the validity of the odor-proof container requirement.

- 12 -

being transported, possessed, or used in a manner contrary to law"). The Third District has held that "the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search [a] vehicle." *Stribling*, 2022 IL App (3d) 210098, ¶ 28. We now resolve the conflict between the districts and consider whether the legalization of cannabis affects the legality of warrantless searches based on the odor of burnt cannabis.

¶ 46        At oral argument, the State conceded[6] that the smell of burnt cannabis, standing alone, is insufficient to give an officer probable cause to search a vehicle.[7] While we are not bound by the State's concession (*In re Brandon P.*, 2014 IL 116653, ¶ 44), we agree with the concession in this case. The laws on cannabis have changed in such a drastic way as to render the smell of burnt cannabis, standing alone, insufficient to provide probable cause for a police officer to search a vehicle without a warrant. See 720 ILCS 550/4 (West 2020); 410 ILCS 705/10-5(a)(1), 10-10(a) (West 2020); 625 ILCS 5/11-502.15 (West 2020).

¶ 47        Unlike the legal landscape considered in *Hill*, Illinois cannabis law has evolved, and use and possession have not only been decriminalized in numerous situations, but they have been legalized in numerous situations. See 410 ILCS 705/10-5(a)(1), 10-10(a) (West 2020). There are now a myriad of situations where cannabis can be used and possessed (*id.*), and the smell resulting from that legal use and possession is not indicative of the commission of a criminal offense. See 720 ILCS 5/2-12 (West 2020) (" 'Offense' means a violation of any penal statute of this State.").

---

[6]The following two colloquies occurred during oral argument:

CHIEF JUSTICE THEIS: "So you are conceding that the case *** where there is burnt marijuana, you are conceding that that is the case in which the analysis should be totality of the circumstances?"

STATE: "Yes. *** The smoked cannabis, yes. *** It is not directly before this court because there were additional circumstances beyond the smell of cannabis alone."
        ***
JUSTICE HOLDER WHITE: "Okay, so burnt cannabis, you're stopped and the officer smells burnt cannabis. *** Your argument is that that alone is insufficient to search the vehicle?"

STATE: "I think that's correct though it's not necessarily before this court *** because there were additional circumstances in this case which I believe led to the probable cause."
Justice Holder White was present for oral argument in this case but did not participate in the decision.

[7]The State argued in its brief that "the odor of cannabis—whether in raw or burnt form—continues to provide police with probable cause to search the vehicle."

Therefore, given the fact that under Illinois law the use and possession of cannabis is legal in some situations and illegal in others, the odor of burnt cannabis in a motor vehicle, standing alone, is not a sufficiently inculpatory fact that reliably points to who used the cannabis, when the cannabis was used, or where the cannabis was used.

¶ 48        A comparison to the odor of alcohol caselaw supports the conclusion that probable cause does not exist based on the smell of burnt cannabis alone. See 410 ILCS 705/1-5(b) (West 2020) (finding that "cannabis should be regulated in a manner similar to alcohol"). "Similar to cannabis, possession of alcohol is lawful under some circumstances but remains unlawful under other circumstances." *Hill*, 2020 IL 124595, ¶ 36; see, *e.g.*, 625 ILCS 5/11-502(a) (West 2020) (providing that "no driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken"); 625 ILCS 5/11-501(a) (West 2020) ("A person shall not drive or be in actual physical control of any vehicle within this State while: (1) the alcohol concentration in the person's blood, other bodily substance, or breath is 0.08 or more ***."). Our cases, and those of other jurisdictions, support the proposition that more is needed to establish probable cause than the odor of alcohol.

¶ 49        For example, in *People v. Smith*, 95 Ill. 2d 412, 415 (1983), the officer stopped the driver of a truck based on an expired sticker. The officer smelled alcohol on the defendant's breath and observed an open bottle in a brown paper bag. *Id.* at 416. "The bottle's neck was exposed and the officer could observe that it contained liquid." *Id.* "Judging from the shape of the bottle and color of the label on the neck, the officer was nearly certain that it was a bottle of Miller's beer." *Id.* We held that on this information "alone it was reasonable for the officer to enter the passenger compartment of the defendant's vehicle in order to inspect the bottle and search for alcohol." *Id.* at 420. Similarly, the appellate court held that probable caused existed in *People v. Corrigan*, 45 Ill. App. 3d 502 (1977), where the officers (1) observed a passenger's hurried and suspicious movements, (2) observed liquid dripping from the glove compartment, and (3) smelled the odor of alcohol. The court held that the "odor of alcohol associated with the dripping glove compartment would warrant the belief of a reasonable man that further investigation was appropriate." *Id.* at 505.

¶ 50 Courts from other states agree. In *State v. Stevenson*, 321 P.3d 754, 763 (Kan. 2014), the Supreme Court of Kansas held that probable cause to search a vehicle did not exist based on the strong odor of alcohol coming from the vehicle. There, officers stopped the defendant for a turn signal violation. *Id.* at 756. When the officers approached, they smelled the very strong odor of alcohol. *Id.* The defendant exited the vehicle, passed field sobriety tests, and then was allowed to reenter the vehicle. *Id.* The officers then searched the vehicle. *Id.* at 757.

¶ 51 The court conducted a detailed analysis of the facts known to the officers in relation to the crime suspected, transporting an open container of alcohol, to determine if there was a "fair probability" that a search would uncover evidence of the crime. *Id.* at 762-63. The court noted several exculpatory facts that the officers discovered during their investigation, including that the defendant passed a field sobriety test and that an initial observation into the vehicle uncovered no open containers. *Id.* at 763. The court stated:

> "the totality of the circumstances in this case only establishes that the officers' observation of a very strong odor of alcohol emanating from within the vehicle, which they suspected to be the result of spilled alcohol, provided them with reasonable suspicion to extend the traffic infraction detention to further investigate whether [the defendant] was transporting an open container of alcohol." *Id.*

The court concluded that the "officers' failure to acquire additional inculpatory facts relating to the crime being investigated before commencing their search of the vehicle rendered the search unreasonable and unlawful." *Id.*; see *State v. Burbach*, 706 N.W.2d 484, 489 (Minn. 2005) (odor of alcohol did not justify search during a traffic stop).

¶ 52 In *State v. Torgerson*, 995 N.W.2d 164 (Minn. 2023), the Minnesota Supreme Court extended the reasoning of *Burbach* to a case involving the odor of cannabis in a vehicle. The *Torgerson* court said:

> "[W]e hold that the odor of marijuana may be considered as part of the probable cause calculus. Specifically, the odor of marijuana is one of the circumstances in the totality of circumstances analysis that should be considered in

determining if there is a 'fair probability' that contraband or evidence of a crime will be found in the location searched. [Citations.]

\*\*\*

It is undisputed that the only indication that evidence of a crime or contraband may be found in Torgerson's vehicle was the odor of marijuana emanating from the vehicle. \*\*\* There was nothing in Torgerson's actions to give suspicion that he was under the influence while driving, no drug paraphernalia or other evidence to indicate that the marijuana was being used in a manner, or was of such a quantity, so as to be criminally illegal, and no evidence showing that any use was not for legal medicinal purposes. In the absence of any other evidence as part of the totality of the circumstances analysis, the evidence of the medium-strength odor of marijuana, on its own, is insufficient to establish a fair probability that the search would yield evidence of criminally illegal drug-related contraband or conduct." *Id.* at 174-75.

¶ 53 The Minnesota Supreme Court's ruling comports with several recent decisions from other states that have reduced or eliminated criminal penalties for cannabis possession and use. See *Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021) ("the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances"); *Commonwealth v. Craan*, 13 N.E.3d 569, 574 (Mass. 2014) ("Since the enactment of the 2008 initiative decriminalizing the possession of one ounce or less of marijuana, we have held that the odor of burnt marijuana alone cannot support probable cause to search a vehicle without a warrant.").

¶ 54 Therefore, based on our precedent and the state of cannabis laws at the time of the search, we hold that the odor of burnt cannabis is a fact that should be considered when determining whether police have probable cause to search a vehicle, but the odor of burnt cannabis, standing alone without other inculpatory facts, does not provide probable cause to search a vehicle. In light of our holding, *Stout*'s core holding—that an officer's detection of the odor of burnt cannabis emanating from a vehicle, standing alone, establishes probable cause to conduct a warrantless search of the vehicle—is no longer valid for searches that occurred on

or after January 1, 2020.

¶ 55                    F. The Totality of the Circumstances Did
                       Not Provide Probable Cause to Search

¶ 56        We have summarized the state of the law regarding cannabis in September 2020. Now we will discuss in more detail the legal landscape in relation to the search in this case. We pause here to discuss, in slightly more detail, what crimes Combs was investigating.

¶ 57        First, the State argues that Redmond was likely violating the Vehicle Code by using cannabis in a motor vehicle. 625 ILCS 5/11-502.15 (West 2020). Section 11-502.15 of the Vehicle Code provides: "No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State." *Id.* § 502.15(a). Second, Redmond may have violated the Vehicle Code by possessing cannabis in a motor vehicle in violation of the Vehicle Code. See *id.* § 11-502.15(b) ("No driver may possess cannabis within any area of any motor vehicle upon a highway in this State except in a sealed, odor-proof, child-resistant cannabis container."). What is notable about the Vehicle Code provisions is that they do not prohibit the possession or use of cannabis within a motor vehicle. See *id.* § 502.15. The gravamen of the offenses is that the conduct occurs "upon a highway in this State."[8] Thus, it would not have been a violation of the Vehicle Code for Redmond to have used cannabis in a motor vehicle before he left Des Moines or in any location within Illinois not considered a "highway."[9]

¶ 58        Finally, the State points to the Regulation Act's (1) prohibition against the use of cannabis in a motor vehicle and (2) prohibition against the possession of cannabis in a motor vehicle "unless the cannabis is in a reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving." 410 ILCS 705/10-35(a)(2)(D) (West 2020); *id.* § 10-35(a)(3)(D). Notably, these are not

---

[8]We note the narrowness of these prohibitions in comparison to the prohibition against driving while under the influence, which applies if a person "drive[s]" or is in "actual physical control of any vehicle within this State." 625 ILCS 5/11-501(a) (West 2020).

[9]The Vehicle Code defines "highway" as the "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or located on public school property." 625 ILCS 5/1-126 (West 2020).

offenses themselves. Instead, the Control Act establishes the penalty structure for the possession of cannabis. See 720 ILCS 550/4(a)-(g) (West 2020). Section 10-5 of the Regulation Act then generally grants immunity from prosecution for the use and possession of cannabis. Section 10-35 then describes conduct for which section 10-5 does not apply. In other words, if the State can establish that an individual is engaged in conduct described in section 10-35 (*i.e.*, the individual used cannabis in the vehicle or possessed cannabis in an unauthorized container), the individual's possession of cannabis is not immune from the Control Act's general prohibition against the possession of cannabis.

¶ 59        The State contends that the totality of the circumstances, including Combs's detection of the strong odor of burnt cannabis, made it reasonable to suspect that Redmond had smoked cannabis in the car on his way from Des Moines to Chicago. The State relies on the following facts in addition to the strong smell of burnt cannabis coming from the vehicle: (1) the stop occurred on Interstate 80, halfway between Des Moines and Chicago, (2) Combs continued to smell the odor of burnt cannabis in the vehicle after he removed Redmond, (3) Redmond did not produce his license and registration, and (4) Redmond did not provide direct answers to Combs's questions about where he lived or why he was traveling from Des Moines to Chicago. The State concludes that these facts established probable cause to believe that Redmond violated the Vehicle Code and Regulation Act.

¶ 60        The first two facts are not inculpatory facts that provide probable cause for a search. Notably, the State has abandoned its argument related to, and the trial court discounted as "unpersuasive," Combs's testimony that Interstate 80 is a "drug corridor." That Redmond had likely been in the car for a lengthy period and that the smell of cannabis remained in the car when Redmond was removed support a reasonable suspicion that he had smoked cannabis in the car at some point. However, Combs, aside from the smell, observed no signs of impairment and no drug paraphernalia or evidence of cannabis use in the car. See *Stevenson*, 321 P.3d at 763 ("Country common sense would likewise lead one to believe that an intoxicated person would be more likely to have an open container in the vehicle from which he or she had been drinking than a sober person who had passed the field sobriety tests."). Combs also did not smell the odor of burnt cannabis on Redmond, which undercuts the reasonable belief that Redmond had recently smoked cannabis inside the vehicle while on an Illinois highway.

¶ 61    We are unpersuaded that the two latter facts provided any support to the probable cause analysis. First, while it is a violation of the Vehicle Code for a driver not to have his driver's license in his immediate possession when operating a motor vehicle (625 ILCS 5/6-112 (West 2020)), that violation does not add to the probable cause analysis because it did not make it any more likely that evidence of the suspected crime would be present. Also, Combs's search through the Secretary of State's database established that Redmond had a valid Illinois license at the time of the stop. Second, the trial court found, and we agree, that there was a semantic difference between Combs and Redmond regarding Redmond's living arrangements. Redmond explained that he lived in Chicago but was temporarily staying in Des Moines because of the pandemic. Combs continued to construe that explanation as Redmond stating that his permanent address had changed to Des Moines. We also agree with the trial court's finding that Redmond's alleged failure to give "direct answers" on his living arrangements did not make it any more likely, alone or along with the other evidence, that Redmond's car contained contraband or evidence of a crime.

¶ 62    Police are also, in considering the totality of the circumstances, required to consider facts that tend to defeat or dispel probable cause. See *United States v. Cortez*, 449 U.S. 411, 417 (1981) ("But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account."); *Terry v. Ohio*, 392 U.S. 1, 28 (1968) (recognizing that facts may be uncovered that "dispel" an officer's initial reasonable suspicion). As the appellate court noted,

> "Redmond did not delay pulling over or make any furtive movements, he rolled down the window when Combs came to the passenger side of the vehicle, and Combs did not observe any cannabis or related drug paraphernalia in the vehicle, smoke in the vehicle, or signs of impairment in Redmond." 2022 IL App (3d) 210524, ¶ 22.

¶ 63    In short, Officer Combs's detection of the strong odor of burnt cannabis coming from the vehicle certainly established reasonable suspicion to investigate further. Combs reasonably investigated whether Redmond had violated the Vehicle Code and whether Redmond was driving impaired. When his further investigation did not yield any inculpatory facts, the quantity of evidence never advanced on the

continuum from reasonable suspicion to probable cause to search. Therefore, the search was unreasonable and unlawful, and the circuit court properly granted Redmond's motion to suppress the evidence in this case.

¶ 64    Finally, the State argues that this court should reverse the circuit court because Combs acted in good faith when he searched Redmond's car. The State did not raise any issue regarding the good faith exception in the circuit court. The State forfeited the issue a second time by failing to raise it in the appellate court. See *People v. Sophanavong*, 2020 IL 124337, ¶ 21. Therefore, we decline to address the State's twice-forfeited good faith argument.

¶ 65                              III. CONCLUSION

¶ 66    In sum, since January 1, 2020, the use and possession of cannabis is presumptively lawful, subject to certain restrictions. See 410 ILCS 705/10-5(a) (West 2020) ("Beginning January 1, 2020 ***."). We hold that the odor of burnt cannabis, alone, is insufficient to provide probable cause for police officers to perform a warrantless search of a vehicle. We also hold that the totality of the facts and circumstances known to Officer Combs did not provide probable cause to search Redmond's vehicle. Therefore, the circuit court correctly granted the motion suppressing the evidence confiscated from Redmond. Accordingly, we affirm the appellate court's decision affirming the trial court's order suppressing the evidence seized in the warrantless search of Redmond's car.

¶ 67    Judgments affirmed.

¶ 68    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.