2025 IL App (1st) 231050-U

SECOND DIVISION
March 31, 2025

No. 1-23-1050

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 06552 |
| | ) | |
| KEVIN CLAY, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Reversed and remanded for third-stage hearing on postconviction claim that counsel was ineffective for not moving to suppress gun as fruit of illegal search. Facial and as-applied challenges to armed habitual criminal statute fail.

¶ 2    Petitioner Kevin Clay was convicted of being an armed habitual criminal (AHC) and now appeals from the second-stage dismissal of his post-conviction petition. He seeks an evidentiary hearing on his claim that counsel was ineffective for not moving to suppress the gun as the fruit of an illegal search. He also raises facial and as-applied challenges to the AHC statute that he did not raise below. We reject petitioner's constitutional challenges but agree that his claim of ineffective assistance should have advanced. We reverse the judgment and remand for a third-stage evidentiary hearing on the ineffectiveness claim.

¶ 3                                   BACKGROUND

¶ 4      The underlying facts and trial evidence are set forth in our decision on direct appeal. *People v. Clay*, 2019 IL App (1st) 171375-U, ¶¶ 4-14. We recap only the necessary facts here.

¶ 5      Petitioner was convicted of AHC after Chicago Police officers searched the trunk of a car he was driving in April 2015 and found a gun. Counsel did not file a motion to suppress, and the case proceeded directly to a bench trial. Officers Martino and Scudella gave their account of the stop and search. Petitioner took the stand and gave his.

¶ 6      Officers Martino and Scudella testified, in sum, that they were on patrol when they saw a Ford Taurus run a red light. The Taurus was travelling in the opposite direction, so they made a U-turn and activated their lights and siren. By the time they caught up with the Taurus, it had turned onto a side street and was parked next to the curb. The two prior occupants were walking away from the car, in opposite directions. Petitioner, the driver, dropped the keys in the street as he walked away. Petitioner identified the passenger as his friend, Derrell Lewis. The officers ordered petitioner and Lewis to come back, and they complied. The officers did not see either of them put anything into the back seat or trunk at any time.

¶ 7      When petitioner returned to the car, Martino asked for his driver's license; petitioner said he did not have one. More specifically, his license was suspended, but the basis for the suspension was not in evidence and is not otherwise in the record on appeal. (More on this point later.) In any event, petitioner was handcuffed and brought to the front of the squad car.

¶ 8      The officers conferred with each other and agreed that they smelled a "strong" odor of cannabis. When they questioned petitioner, according to the officers, he readily acknowledged that he and Lewis recently smoked a blunt. On this basis, the officers performed what they called a "narcotic search" of the car. They did not find any cannabis, residue, or paraphernalia. But they

did notice that the pass-through to the trunk was open. As soon as they opened the trunk to search it, petitioner took off running. He didn't get very far, given that he was in handcuffs.

¶ 9    In the trunk, the officers found a gun tucked into a knit winter hat. Petitioner was arrested and, according to the officers, later admitted at the station that the gun was his. The Taurus was registered to a third party—neither petitioner nor Lewis—but the officers did not provide the name of the owner at trial.

¶ 10    Petitioner testified in his own defense. He said the Taurus belonged to his neighbor, Cory Boyd. It was for sale, and petitioner was interested, so he took it out for a test drive with Lewis. Later, when the car was already parked, two officers stopped them. Petitioner threw the keys into the street because his license was suspended, and thus he could not legally drive.

¶ 11    The officers asked if they were "smoking weed," to which petitioner responded, "No. I don't smoke weed. I smoke cigarettes." The officers nonetheless searched the car, and at some point in that process, petitioner tried to run away, since he knew that his license was suspended and that he could "go to jail" if he got caught driving. As petitioner would have it, his alleged admission at the station, the only evidence that directly tied him to the gun, was a "sarcastic" quip, meant to underscore his impression that he was at the mercy of the officers.

¶ 12    The State offered proof of two prior convictions as predicate offenses for the AHC charge: a Class 1 manufacture/delivery of a controlled substance, and a Class 2 aggravated battery of a peace officer.

¶ 13    The trial court credited the officers' account of petitioner's stationhouse admission that the gun was his and, on this basis, found him guilty of AHC. Petitioner was sentenced to 8 years in prison. We affirmed his conviction on direct appeal, rejecting his sufficiency challenge to the State's proof of constructive possession and his contention that the trial court erred in admitting

certain prior convictions for impeachment purposes only (and thus not as AHC predicates). We also merged his conviction for the lesser offense of unlawful use of a weapon by a felon.

¶ 14    Petitioner's timely *pro se* petition was advanced to the second stage. Appointed counsel filed a supplemental petition that retained petitioner's claim that his trial attorney was ineffective for not moving to suppress the gun on fourth-amendment grounds.

¶ 15    The petition alleged that the officers lacked probable cause to search the trunk of the car. As petitioner framed the issue, it turned on a credibility contest. In his affidavit, as at trial, petitioner denied admitting to the officers that he had recently smoked a blunt. He also attested that there was no smell of cannabis in the car, for the simple reason that they weren't smoking. Petitioner told his trial attorney all of this, but counsel did not move to suppress the gun. Taken as true, petitioner's allegations would show that the officers did not have probable cause to search the trunk, and with the gun suppressed, petitioner would not have been convicted.

¶ 16    Moving to dismiss the petition, the State argued that the trial court "did do credibility determinations with these similar facts at the actual bench trial and determined that the officers were credible and not the defendant."

¶ 17    The circuit court dismissed the petition, but not for the reason given by the State. The circuit court did not claim that the relevant credibility determination was made at trial. Instead, the court articulated a theory of probable cause that did not rely on the smell of cannabis at all: probable cause was based on "[t]he suspicious behavior of the defendant, specifically about him exiting the car, walking in the opposite direction of the passengers [*sic*] and dropping the key."

¶ 18                                ANALYSIS

¶ 19                          I. Ineffective assistance

¶ 20    Petitioner says he is entitled to an evidentiary hearing on his claim that trial counsel was

ineffective for not moving to suppress the gun as the fruit of a search conducted without probable cause. At the second stage, he must make a "substantial showing" that trial counsel was ineffective. *People v. Agee*, 2023 IL 128413, ¶ 69. All factual allegations in the petition and its supporting affidavits must be liberally construed and taken as true, unless they are positively rebutted by the trial record. *Id.* The court may not resolve factual disputes or make credibility determinations at this stage. *People v. Sanders*, 2016 IL 118123, ¶ 42. We review the second-stage dismissal of a petition *de novo*. *Agee*, 2023 IL 128413, ¶ 34.

¶ 21    Petitioner alleges that he did not smoke cannabis, that he never said otherwise to the officers, that the car did not smell—indeed, could not have smelled—of cannabis, as the officers claimed, and that he told all of this to his trial attorney. Taken as true, he says, these allegations show that the officers did not have probable cause to conduct the "narcotic search," in their own phrase, that yielded the gun. What's more, the search did not reveal any cannabis, ashes, residue, paraphernalia, or any other indication, apart from the purported smell, that the car's occupants were using cannabis.

¶ 22    In short, the allegations are not rebutted by the trial record, and taken as true, they clearly support a meritorious motion to suppress. Without the gun in evidence, the State could not have convicted petitioner of AHC. Petitioner thus argues that he has made a substantial showing that counsel was deficient, and that he was prejudiced by counsel's failure to move for suppression.

¶ 23    We agree. If petitioner's allegations are credited, the police did not have probable cause to search the car, since the "narcotic search" was clearly based on the purported odor of cannabis and petitioner's alleged admission that he and Lewis were smoking it. Petitioner's claim rests on a credibility determination that must await a third-stage evidentiary hearing. *Sanders*, 2016 IL 118123, ¶ 42. The State, notably, does not dispute any of this.

¶ 24     Nor does the State argue here, as it did below, that the relevant credibility determination was made at trial. For good reason; it wasn't. True, the trial court did find the officers credible, and petitioner not, in *other* contexts—most prominently, with respect to their competing accounts of petitioner's post-arrest statement, at the police station, in which he is said to have admitted that the gun was his. But the trial court made no credibility findings regarding the basis for the search, if only because the defense did not *challenge* the search. The trial court thus had no need to resolve this dispute to render its verdict; the only question for the court was whether the State proved that petitioner had constructive possession of the gun in the trunk.

¶ 25     Likewise, the State does not even try to defend the circuit court's alternate theory of probable cause to search. The circuit court here based probable cause on the fact that petitioner dropped the keys in the street and walked away from the car, in the opposite direction as Lewis. This is admittedly odd behavior that might warrant a *Terry* inquiry. But it would not have allowed the officers to proceed directly to a search of the trunk or the car more generally.

¶ 26     Probable cause for a search only arises "where the evidence known to the officer raises a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Redmond*, 2024 IL 129201, ¶ 26 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). At the time, the only crime the officers had observed was running a red light. They could not reasonably expect to find evidence of that traffic offense anywhere in the car.

¶ 27     The same goes for driving with a suspended license, an offense the officers discovered later during the stop: "driving with a suspended license [is] an offense for which police could not expect to find evidence in the passenger compartment of [the] car." *Arizona v. Gant*, 556 U.S. 332, 344 (2009). Or, we would add, in the trunk. Thus, for the search to be founded on probable cause that the car contained evidence of a crime, the police *had* to rely on the purported evidence

of cannabis use. They had no other "evidentiary basis" for conducting a search. See *id.*

¶ 28　One final point, before we turn to the State's main appellate theory. There is no evidence in the record that trial counsel made a strategic decision, for whatever perceived reason, not to file a motion to suppress. Of course such evidence could, in principle, surface at a hearing, and if it does, the circuit court can evaluate it in due course. At this stage of the proceeding, the State's formulaic insistence that suppression motions are a matter of "trial strategy" is not a reason to dismiss a claim that has legal merit and thus will prevail if its factual allegations are ultimately credited after a hearing. (Whether the circuit court will credit defendant's allegations, of course, is another story, but that is for the third stage. *Sanders*, 2016 IL 118123, ¶ 42.)

¶ 29　That brings us to the State's principal argument: a motion to suppress would have been futile, because the police would have discovered the gun during an inventory search. To this end, the State argues that the police had probable cause to stop petitioner for a running a red light. During the stop, petitioner admitted that he was driving on a suspended license. On that basis, petitioner was subject to arrest, and the car was subject to impoundment under section 9-80-240 of the Municipal Code of Chicago. MCC, Ch. 9-80, § 9-80-240. Impoundment, in turn, would have justified an inventory search. *People v. Mason*, 403 Ill. App. 3d 1048, 1054 (2010). And that search would have uncovered the gun in the trunk.

¶ 30　The doctrine of "inevitable discovery" provides that evidence obtained in an illegal search will not be suppressed if it " 'would inevitably have been discovered without reference to the police error or misconduct.' " *People v. Sutherland*, 223 Ill. 2d 187, 227-28 (2006) (quoting *Nix v. Williams*, 467 U.S. 431, 448 (1984)). The gun would have been admissible under this doctrine, the State argues, even if the officers did not have probable cause to search the trunk based on the purported smell of cannabis and petitioner's alleged admission that he recently

smoked some with Lewis.

¶ 31    We agree with petitioner that the record is factually incomplete and thus inadequate for us to apply the inevitable-discovery doctrine at this juncture. This is hardly surprising, given that neither the suppression issue in general, nor the State's theory in particular, was litigated below. For our purposes here, it will suffice to point out one obvious way in which the record on appeal is factually incomplete, as petitioner points out in his brief.

¶ 32    The record does not reveal *why* petitioner's license was suspended. And the reason for the suspension could make all the difference to the State's inevitable-discovery theory. The first and most basic requirement for a valid inventory search—which is the whole predicate for the State's theory—is that the car had to be *lawfully* impounded. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). The State flatly asserts that it was, simply because petitioner's license was suspended, for whatever unknown reason. According to the State, the Municipal Code of Chicago provides for the impoundment of a vehicle "operated by a person with a suspended or revoked driver's license." MCC Ch. 9-80, § 9-80-240(a)(1).

¶ 33    True, but incomplete. As petitioner notes, impoundment is not automatic under section 9-80-240. Whether it is authorized depends on the basis for the suspension. A vehicle is not subject to impoundment if the driver's license was suspended for "failure to pay any fine due and owing for *** parking, standing, compliance, automated speed enforcement system, or automated traffic law enforcement system violations," or for "failure to comply with emission testing." *Id.* § 9-80-240(a)(2)(i)-(ii). These exemptions are incorporated into the relevant Chicago Police Department order governing impoundment. Special Order S07-03-05, Impoundment of Vehicles For Municipal Code Violations, § III.D, available at http://directives.chicagopolice.org/#/directive/public/6831 (last visited March 18, 2025).

¶ 34     As we have noted, the basis for petitioner's license suspension is not a fact of record. For this reason alone, the inevitable-discovery doctrine cannot be applied to this case without further factual development.

¶ 35     We do not mean to imply that this is the only unanswered question about the State's theory. Far from it; it is just one simple (albeit sufficient) example of why a remand is necessary. We would emphasize that *any* search, including an inventory search, ultimately must be reasonable under the fourth amendment. And without knowing, for example, whose car petitioner was driving, or whether (as petitioner seemed to imply) the car was parked in proximity to the owner's house when he was arrested, it is difficult to know whether impoundment (if authorized under the municipal code) and the resulting inventory search would have been reasonable in these particular circumstances. But it is not our place to structure the parties' arguments and proofs for them. We leave them to make their records—as they see fit, and on pain of forfeiture—regarding all questions that bear on the validity of the inventory search hypothesized by the State's inevitable-discovery theory.

¶ 36     The petition is remanded for an evidentiary hearing on petitioner's claim of ineffective assistance of trial counsel.

¶ 37                              II. Facial and as-applied challenges to AHC statute

¶ 38     Petitioner also claims the AHC statute violates the Second Amendment under the test established in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). He raises both facial and as-applied challenges under the *Bruen* framework. Neither challenge was raised in the petition below. But we will consider each. Facial challenges may be raised at any time, even for the first time on appeal. *People v. Thompson*, 2015 IL 118151, ¶ 32.

¶ 39     An as-applied challenge raised for the first time on appeal is appropriate if, as here, the

"record [is] sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id*. ¶ 37. As we have noted previously, "our supreme court has held that where '[a]ll the facts and circumstances to decide the defendant's claim *** are already in the record' the claim may be raised and reviewed on appeal for the first time even absent a prior evidentiary hearing." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 57 (quoting *People v. Holman*, 2017 IL 120655, ¶ 32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42). This court has previously reviewed as-applied second amendment challenges to the AHC statute raised for the first time on appeal when the record, as here, contains the facts needed for adjudication. See *id*. ¶ 58; *People v. Martin*, 2018 IL App (1st) 152249, ¶¶ 12-13.

¶ 40   We begin with petitioner's facial challenge to the AHC statute. It takes us into well-worn territory, so we have the luxury of being brief. The *Bruen* test proceeds in two steps: we first ask whether "the Second Amendment's plain text covers an individual's conduct;" and if it does, the State "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

¶ 41   The appellate cases thus far have reached conflicting conclusions about *Bruen*'s threshold inquiry. Some hold that felons are categorically excluded from the Second Amendment's protections, while others hold that a felon's possession of a firearm falls within the scope of the amendment and thus warrants an historical inquiry under the second step of the *Bruen* test. Compare *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (because felons are not "law abiding citizens," they are not protected by the Second Amendment and *Bruen*'s historical-tradition analysis "does not apply" to them), with *Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89 ("How the defendant's prior felony might impact his second amendment right to possess a firearm is more properly evaluated under the second step's historical tradition analysis.").

- 10 -

¶ 42　We need not decide which step of the *Bruen* analysis is the more suitable one, for even if petitioner falls within the scope of the amendment's protections and thus satisfies the analysis under step one of *Bruen*, his argument would fail under *Bruen*'s historical-tradition analysis. That is, laws that prohibit felons from possessing firearms are generally consistent with our historical tradition of firearm regulation. See *Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89.

¶ 43　We have undertaken the historical analysis required by *Bruen* in several previous cases, and we will not repeat it all here. The case most directly on point is *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33, which rejected facial challenges to the AHC and UUWF statutes, on the ground that these firearm prohibitions are consistent with our historical tradition.

¶ 44　And for a sampling of appellate cases from the various districts that agree with this analysis, see *People v. Stephens*, 2024 IL App (5th) 220828, ¶¶ 34-39 (rejecting facial challenge to UUWF statute under second step of *Bruen*); *Brooks*, 2023 IL App (1st) 200435, ¶¶ 68-101 (rejecting as-applied challenge to AHC statute, finding prohibition on firearm possession by non-violent felon consistent with historical tradition); *Awkerman v. Illinois State Police*, 2023 IL App (2d) 220434, ¶¶ 49-56 (rejecting as-applied challenge to FOID Act provisions that permit denial of FOID card based on applicant's conviction for felony drug offense).

¶ 45　We agree that the historical analysis set forth in these cases satisfies the second step of the *Bruen* test and is thus sufficient to dispose of petitioner's facial challenge to the AHC statute. We respectfully decline his invitation to reconsider these rulings.

¶ 46　Petitioner further argues that the AHC statute is unconstitutional as applied to him, because it resulted in his "disqualifi[cation] from gun ownership based on drug offenses" alone. And our national tradition of firearm regulation does not justify this disqualification, he says, since proof of "violent dangerousness" has historically been deemed necessary.

¶ 47    One preliminary point, before we turn to the merits of the as-applied challenge. Petitioner acknowledges that the two prior convictions offered at trial, as AHC predicate offenses, included a Class 1 manufacture/delivery of a controlled substance, and a Class 2 aggravated battery to a peace officer from 2008. Petitioner says the aggravated battery "did not qualify as a predicate for AHC." He offers no argument in support of this assertion, but it does appear to have merit.

¶ 48    To qualify as an AHC predicate, this conviction had to count as a "forcible felony." 720 ILCS 5/24-1.7(a)(1) (West 2008). An aggravated battery is a forcible felony only when it "result[s] in great bodily harm or permanent disability or disfigurement." 720 ILCS 5/2-8 (West 2008); *People v. Smith*, 2016 IL App (1st) 140496, ¶ 11; *People v. Schmidt*, 392 Ill. App. 3d, 689, 696 (2009). And a Class 2 aggravated battery to a peace officer cannot have caused great bodily harm, since that result would have elevated the offense to a Class 1 felony. 720 ILCS 5/12-4(b)(18), (e)(2)-(3) (West 2008).

¶ 49    It thus appears that the State did not prove up two valid AHC predicates at trial. But the judgment of conviction has not been challenged on sufficiency or *Strickland* grounds. That said, as petitioner admits, he did have "another prior qualifying drug conviction" that the State could have offered as a second AHC predicate. Petitioner thus asks us to hear an as-applied challenge that treats his AHC conviction as predicated on the two drug offenses.

¶ 50    The State does not argue that we cannot consider petitioner's as-applied challenge on these terms. As in *Brooks*, 2023 IL App (1st) 200435, ¶¶ 57-59, the as-applied challenge is based on fact that the AHC predicates were drug offenses, and thus the record is adequate to resolve the as-applied challenge on appeal, even though it was not raised below. We perceive no obstacle to hearing petitioner's as-applied challenge.

¶ 51    But the challenge fails, for reasons that our prior cases have made clear. Both *Brooks* (*id.*

¶¶ 68-101), and *Awkerman*, 2023 IL App (2d) 220434, ¶¶ 49-56, heard as-applied challenges based on the argument that a firearm disqualification cannot arise solely from prior drug offenses. Both cases concluded that such regulations are consistent with our historical tradition and thus survive scrutiny under the second step of the *Bruen* test. We adhere to these rulings.

¶ 52                                                 CONCLUSION

¶ 53      We reverse the circuit court's ruling granting the State's motion to dismiss and remand for third-stage proceedings on petitioner's claim of ineffective assistance of trial counsel.

¶ 54      Reversed and remanded.