NOTICE

Decision filed 05/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230523-U

NO. 5-23-0523

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 20-CF-465 |
| | ) | |
| MELVIN J. WOOLFOLK, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err in denying the defendant's motion to suppress evidence where the police officer did not conduct an unlawful search and seizure. The State presented sufficient evidence for the jury to find the defendant guilty of methamphetamine conspiracy.

¶ 2   A jury found the defendant, Melvin J. Woolfolk, guilty of possession of a controlled substance, possession of methamphetamine, unlawful possession with intent to deliver a controlled substance, possession with intent to deliver methamphetamine, and methamphetamine conspiracy. The defendant was sentenced to two concurrent 15-year sentences in the Illinois Department of Corrections (IDOC) for the methamphetamine conspiracy and unlawful possession with intent to deliver a controlled substance charges, followed by 18 months of mandatory supervised release (MSR) as the remaining counts merged under the one-act, one-crime rule. On appeal, the defendant claims that the circuit court erred by denying a motion to suppress evidence. The defendant

1

additionally argues that the police officer improperly extended the traffic stop to conduct a drug interdiction investigation, and that the State failed to prove methamphetamine conspiracy beyond a reasonable doubt. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On September 10, 2020, the defendant was driving a rental vehicle with his girlfriend, Michelle Beard. They were traveling southbound on Interstate 57 through Coles County when Deputy Sheriff Cody Collins initiated a traffic stop. The vehicle had been traveling 6 miles per hour (mph) over the 70-mph speed limit. During the traffic stop, Collins could see a container of cannabis in the center console of the vehicle. The defendant was asked to exit the vehicle, Collins completed a pat-down of the defendant, and then Collins questioned the defendant while they sat inside of Collins's patrol vehicle. After questioning the defendant, Collins approached Beard, who had remained in the passenger seat of the stopped vehicle. After a brief discussion with Beard, Collins proceeded to search the vehicle and discovered a package containing methamphetamine and fentanyl pills under the carpet of the passenger area. Once the contraband was discovered, the defendant and Beard were then read their *Miranda* rights and arrested.

¶ 5      The defendant was charged by information for the offenses of methamphetamine conspiracy (720 ILCS 646/65(a) (West 2020)); unlawful possession with intent to deliver methamphetamine (720 ILCS 646/55(a)(2)(E) (West 2020)); unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(1.5)(A) (West 2020)); methamphetamine possession (720 ILCS 646/60(a) (West 2020)); and possession of a controlled substance (720 ILCS 570/402(c) (West 2020)). Beard, who is not a party to this appeal, was a codefendant in this case, and she retained the same attorney as the defendant.

2

¶ 6 Defense counsel filed a joint motion to suppress evidence and argued that there was no legal basis to conduct the search of the vehicle after discovering an "unsealed" cannabis container, and that Collins lacked probable cause to believe that additional evidence of a crime would be discovered during a search. Additionally, the defense argued that the traffic stop was transformed into a custodial interrogation without *Miranda* warnings. Specifically, Collins conducted a pat-down of the defendant; the defendant was questioned in the patrol car and not permitted to leave; and the defendant was read his *Miranda* rights after Collins had performed a search of the vehicle. The defense sought to suppress all statements made by the defendant and Beard, beginning with the defendant exiting the vehicle. The defense attached Collins's police report and an affidavit of arrest regarding the traffic stop to the joint motion to suppress.

¶ 7 The State argued, in its written response, that Collins had probable cause to search the vehicle for contraband after he smelled raw cannabis and was able to see a jar of unsealed cannabis. The odor and observation of cannabis was indicative of criminal activity which justified the probable cause search of the vehicle and any containers that had a reasonable likelihood of containing cannabis. The State additionally argued that the questioning of the passengers was routine police procedure and did not amount to a custodial stop.

¶ 8                                      *Motion to Suppress Hearing*

¶ 9 The circuit court held a hearing on the motion to suppress on May 12, 2021. The defendant did not call any witnesses and relied on the written motion along with the attached police report and affidavit of arrest authored by Deputy Collins. The police report and affidavit were admitted without objection. The State presented Collins as its only witness.

¶ 10 Collins testified that he had been a police officer for over eight years and had attended approximately a hundred hours of trainings that focused on drug interdiction. Collins explained

that "drug interdiction" related to "seeking out *** people that are involved in the transporting of illegal narcotics, weapons, illegal currency, any sort of *** contraband that would be traveling up and down the roadways." Drug interdiction was more specific to detecting contraband and differed from a typical routine patrol focused on basic traffic violations.

¶ 11 Collins testified that he applied "filters" when "doing drug interdiction" to narrow the focus on the drivers "that appear[ ] to be nervous or exhibiting something that would further draw my attention that there may possibly be something more going on." Rental cars, vehicles that dramatically increase in speed, or a car that would attempt to hide or move away from an officer were examples of filters he used to decide whether to stop a vehicle. A driver traveling 100 mph, when the speed limit was 70 mph, on the other hand, would not be stopped by Collins. He reasoned that drivers significantly exceeding the speed limit were less likely to be transporting large amounts of narcotics.

¶ 12 Collins further explained that he was trained to approach stopped vehicles on the passenger side and quickly inform the occupants that he was only going to issue warnings for any traffic violations. For Collins, this action assisted in alleviating nervousness from the occupant who was only concerned about receiving a traffic ticket and allowed Collins to gauge potential criminal activity. Collins also testified that he commonly spoke to suspects in the front seat of his patrol car during traffic stops for his safety. By doing so, an individual could not access any unknown items in the vehicle, and it was easier to have a discussion inside of a patrol car than on a noisy roadside.

¶ 13 Collins testified to the circumstances of the traffic stop that occurred on September 10, 2020, involving the defendant and Beard. Collins was sitting in his patrol car in the median of interstate highway I-57 when he noticed that their vehicle was traveling six mph over the posted speed limit according to his handheld "LIDAR" (light detection and ranging). The vehicle then

4

"rapidly decreased from 76 to 71" which was "indicative of someone who is applying great pressure to the brakes." After Collins noticed the decrease in speed, he exited the median and began following the vehicle as it traveled southbound. Collins testified that he increased his speed so that he was driving parallel to the defendant's vehicle and noticed that the driver exhibited "proxemics." Collins explained that "proxemics" meant "they try to get as far away from the source causing fear." In other words, the defendant was driving close to the white line in his own lane to create distance from the police officer driving next to him. Collins thereafter initiated the traffic stop and noted that the license plate on the vehicle was an "Illinois fleet plate," which was typically used on rental vehicles.

¶ 14    After Collins stopped the vehicle, he approached it from the passenger side. Collins testified that within a "very short amount of time" he was able to detect the odor of raw cannabis. Collins additionally saw a small jar of cannabis located in the center console area. The jar appeared to be unsealed and appeared to contain cannabis. Collins asked the defendant about the cannabis, and he picked up the jar which allowed Collins to determine that the jar was "unsealed." Collins then questioned each passenger about the circumstances surrounding the rental car, and they provided inconsistent answers. The defendant was then asked to step out of the vehicle.

¶ 15    Once the defendant was outside of the rental vehicle, Collins testified that he performed a pat-down of the defendant and found a large sum of cash in his pocket. The defendant was then directed to sit in the front passenger seat of Collins's patrol car to have a conversation. The defendant asked Collins, "what's going on, man, what's with all the questions, cut to the chase." Collins testified that the defendant's response to Collins's questions with questions was, in his view, an "intimidation tactic."

¶ 16    Collins proceeded to ask the defendant questions about his travel destination and purpose. The defendant claimed that he was going to purchase a car near Effingham, Illinois. Collins described the conversation as "tense" when it began due to the defendant's "intimidation tactic," but it "leveled out." Collins additionally testified that the defendant was sitting in the front passenger seat of the patrol car at Collins's request, with the door closed, but not locked. The defendant had not been handcuffed or restrained in any manner.

¶ 17    Once Collins finished asking questions of the defendant, Collins turned his attention to the passenger, Beard. The defendant stood outside of Collins's patrol car with another deputy, who had arrived while the defendant was being questioned. Collins testified that the conversation with Beard started off "fine," but after asking questions, Collins noticed that she was "exhibiting labored breathing." Collins perceived this as "a light level of stress and nervousness." Beard told Collins that they were traveling to an area near Charleston, Illinois, which was not consistent with the defendant's answer that they were headed toward Effingham. Collins then indicated that he was going to perform a search of the vehicle and asked Beard if contraband was going to be found. Beard said "no," and Collins noted that she looked down at the floorboard when she answered.

¶ 18    Beard was then asked to exit the vehicle. After she exited the passenger side of the vehicle, Collins began his search on the front passenger side where Beard had been sitting. Collins started in this area based on Beard's body language during their conversation. Shortly after the search began, Beard approached Collins and asked him what he was doing. Collins testified that Beard's behavior was odd because he had already explained that he was going to perform a search of the vehicle. Collins testified that, in his opinion, Beard's behavior was a tactic to stop the search. While looking around the passenger area, Collins discovered that the carpet directly under the glove box had been tampered with, and it appeared that there was something underneath the carpet.

6

¶ 19   Collins pulled the carpet back and found a "white postal type packaging" under the carpeting. He opened the package and found a layer of grocery bags inside. As he peeled back the layers of grocery bags, Collins found a vacuum sealed package that appeared to contain methamphetamine and approximately 300 pills that resembled fentanyl. Collins conducted a field test on the package and confirmed that it contained methamphetamine.

¶ 20   On cross-examination, Collins confirmed that he observed the defendant's vehicle traveling six mph over the posted speed limit. Collins explained that he applied "filters" when determining whether to stop the defendant's vehicle, such as the speed of the vehicle, and braking with "great pressure" to slow the vehicle to 71. Collins additionally testified that the stop occurred at night, and he was unable to see the vehicle jolt or make apparent reckless changes in its course. Collins began to follow the defendant's vehicle and then drove parallel to the vehicle. Collins observed that the defendant's vehicle was "hugging the white line" away from the patrol car, but did not cross the fog-line. He considered the movement away from the patrol car as a sign of "possible nervousness." No additional "filters" were used before deciding to stop the defendant's vehicle.

¶ 21   Collins additionally testified that once he approached the stopped vehicle, he detected a strong odor of raw cannabis. The amount of cannabis seized was less than five grams, which Collins considered as a "very small amount." Collins further explained that the jar had a "top," and the jar was closed. Collins explained that he was able to smell a strong odor from a very small amount of raw cannabis contained in a closed jar because it was in an "unsealed jar which had been opened at some point." Collins also indicated that the defendant was cooperative; he did not deny that he had cannabis; the cannabis was in a "Virtue" container and that brand was presumably

7

sold at a dispensary; there was no evidence of cannabis use in the vehicle; and the defendant did not appear impaired.

¶ 22   Collins's actions were questioned by the defendant when he was only given a warning for a speeding violation. When Collins asked the defendant for permission to search the vehicle, the defendant responded that the car was not his, and he could not give permission. Collins then informed the defendant that Collins did not need permission because he had probable cause to search the vehicle because of the unsealed cannabis. Collins further testified that the defendant was not free to leave the patrol car, and his *Miranda* rights were not read to him until after the search was conducted.

¶ 23   Collins further explained that the defendant's answers were inconsistent with Beard's answers. For example, Beard did not know that the defendant had planned to purchase a car. Beard also had "mental blocking," where she would begin a sentence and trail off before she finished a thought. Collins believed that criminal activity had occurred based on his conversations with the defendant and Beard, which also led to his search of the vehicle.

¶ 24   After Collins's testimony concluded, the defense began argument on its motion to suppress evidence and statements. In support of its motion, the defense argued that the police officer's report contained "psychological conclusions." Collins had made "sweeping and significant conclusions" from behavior that appeared relatively standard, and Collins used a "creative justification" to stop a driver traveling 76 mph in a 70-mph zone.

¶ 25   The State argued that the circuit court had to consider the totality of the circumstances when considering Collins's methods instead of each isolated factor. The State then argued that Collins had been specifically trained to narrow down traffic stops using filters, and Collins's assumptions had been correct in this case. The strong smell of cannabis from the lidded jar

8

provided probable cause to search the vehicle for more cannabis. The State additionally argued that anyone detained on a *Terry*[1] stop was not free to leave until the stop concluded. The circuit court was asked to deny the motion to suppress physical evidence and statements.

¶ 26    The circuit court considered that Collins's testimony was consistent with his police report and found Collins's testimony was credible regarding the detection of an odor of cannabis and a violation of the law. The suspicious nature of a driver's nervousness when pulled over by the police on the highway at night was found to be subjective. The circuit court also considered that it would be normal for a driver to slow from 76 mph to 71 mph to avoid a speeding ticket. Additionally, the circuit court was curious about how many drivers Collins's had pulled over who had not engaged in criminal activity.

¶ 27    The circuit court ultimately found that Collins had probable cause to search the rental vehicle based on the odor of cannabis and the unsealed jar of cannabis. The circuit court additionally found that Collins was continuing his traffic stop when the defendant was invited into the patrol car and was questioned and that neither passenger was under arrest or in custody at the time their statements were given. The motion to suppress was denied.

¶ 28                                *Jury Trial*

¶ 29    The jury trial began on February 15, 2023. The State presented Catherine Vail as its first witness. Vail was employed at Enterprise Rent-A-Car as the regional risk manager, and she traveled to multiple stores to ensure that formal inspection protocols were followed. Vail testified to the rental car company's inspection process used by employees and customers when originally renting a car, and again, after the car is returned. She explained that all vehicles were thoroughly

---

[1]See *Terry v. Ohio*, 392 U.S. 1 (1968).

cleaned, which included the removal and vacuuming of mats, before any vehicle was rented to the next customer.

¶ 30    Vail testified that Beard entered into a rental agreement on September 2, 2020, and the rental agreement was admitted into evidence. Vail had never met Beard; she was not familiar with the specific vehicle that was rented; and she had never personally observed the vehicle inspections on that vehicle.

¶ 31    Collins testified for the State after Vail. Consistent with his report, he testified that on September 10, 2020, at approximately 10:45 p.m. on I-57 near mile marker 194½, he pulled over the defendant and Beard after detecting that they were traveling 76 mph and "instantly" decreased to 71 mph. Collins identified the defendant and Beard as the individuals in the courtroom.

¶ 32    Collins testified that he had approached the vehicle on the passenger side and detected a strong odor of raw cannabis. He additionally observed a glass jar with a "Virtue" label on it in the center console area. The defendant lifted the jar for Collins, revealing that the jar contained raw cannabis. Collins continued to ask general questions after he confirmed that the jar was unsealed. He then proceeded to ask the defendant to exit the vehicle. Collins performed a pat-down of the defendant and found that the defendant had $5,450 in his pockets. The defendant explained that he was going to meet someone near Effingham, Illinois, to purchase a car. The defendant was directed to sit in the front passenger area of Collins's patrol car while Collins continued to ask questions. Collins and the defendant had a discussion while in the patrol vehicle.

¶ 33    Collins additionally testified that after finishing his conversation with the defendant, Collins approached Beard, who had remained in the passenger seat of the rental vehicle. Collins testified that his observation of Beard's breathing rate appeared to have increased from their initial interaction. She was asked similar questions as the defendant, but provided different answers.

10

Beard claimed that they were heading past Charleston to visit Woolfolk's cousin for a few days. Beard did not mention that they intended to purchase a car.

¶ 34    Collins informed Beard that he was going to perform a search of the car and asked if there was any contraband in the vehicle. According to Collins, Beard looked down at the floorboard and then responded "no." After she exited the vehicle and Collins started the search, Beard approached Collins and interrupted the search. After a brief discussion, Collins resumed his search in the passenger floorboard area and noticed that the carpet under the glove box had been tampered with. A "white postal-type package" was discovered underneath the tampered carpet. The package, once opened, appeared to contain illegal drugs.

¶ 35    Collins additionally testified regarding other items found in the vehicle which were listed on the property receipt of items taken during the traffic stop. No articles of female clothing were found in the vehicle during the search. Beard only had the contents of her purse and there was a shopping bag found in the vehicle. Neither defendant claimed responsibility for the drugs discovered during the search.

¶ 36    During the traffic stop, Collins wore a body camera. Footage from the body camera was published to the jury and admitted into evidence during Collins's testimony. The video depicted Collins approaching the passenger door of the defendant's vehicle and Collins informed the defendant that they had exceeded the speed limit, but he was not going to issue a ticket. Collins requested both of their IDs and the paperwork for the rental car. The defendant and Beard indicated that they were residents of Illinois. Beard then extended a bottle of water outside of the car window to rinse her hands before handing Collins her ID. Beard stated that her hands were sticky because she was eating chicken. Collins continued to ask about the car rental as Beard searched for the rental agreement. Collins then asked what was in the "Virtue container" and pointed inside the car.

11

The defendant raised the container to show Collins, and Collins stated, "you have to have the seal closed on that, Boss." Within seconds of viewing the container, Collins informed dispatch of his intention to conduct a probable cause search and requested a K9 unit. Collins then asked the defendant to exit the vehicle.

¶ 37    Collins directed the defendant away from the traffic and asked if he had anything in his pockets. The defendant said that he had a couple thousand dollars, and he was going to purchase a car. The defendant removed his wallet and phone for a pat-down. After Collins performed a pat-down, he told the defendant to "hop up front" and he was going to have a "chat." He also informed the defendant that he could put his wallet and phone away.

¶ 38    The video further indicated that once inside Collins's patrol car, the defendant asked what was going on because he had "never been in the front of a police car on a traffic stop." Collins responded that he was "not the regular police" and that he was just having a conversation. Collins had Beard's identification card and the defendant's license in his hands as he performed a search on the patrol car computer. Collins additionally was questioning the defendant about the purpose of his trip and the details regarding the car rental. After Collins completed his search on the computer, Collins informed the defendant that the "open cannabis" was sufficient probable cause to search the vehicle, and Collins asked the defendant to step out of the patrol car.

¶ 39    Before approaching the rental vehicle to question Beard, Collins spoke to another officer who had arrived on the scene. Collins told the officer that he was going to perform a probable cause search because "they had an open—it was from a dispensary, but the seal had been broken on it so I am going to search it." Collins then stated that "it reeks of weed anyway."

¶ 40    Collins then approached Beard and asked where they were headed. Beard provided different answers than the defendant. She also explained that she was not familiar with the area,

and she was not aware that they were going to meet anyone. Collins told Beard that he was going to search the vehicle based on the "unsealed cannabis." Collins additionally asked if she had any property in the vehicle and Beard responded that she had a bag in the back. Collins asked Beard to exit the vehicle and to leave her purse.

¶ 41 The video showed that Collins began the search with the purse. Beard then approached Collins and asked if she was required to get out of the car and that she wanted her phone. Collins confirmed that Beard had to leave the vehicle, and he resumed the search. He searched inside of a fast-food bag next to the passenger seat. Collins then used the defendant's keys in an attempt to open the glove box and noticed something on the floor of the passenger side of the vehicle. The video depicted Collins stating, "What in the world is this?" as he opened and unwrapped the contents of an envelope that contained suspicious contents. Collins then told the defendant and Beard to put their hands behind their back, an officer cuffed them, and Collins read them their *Miranda* rights. Collins informed Beard about the drugs he had discovered under the carpet, and she denied knowing anything about any illegal substances in the vehicle.

¶ 42 After the video concluded, the circuit court read stipulations which included that 437.5 grams of methamphetamine and 27.3 grams of fentanyl were retrieved from the defendant's vehicle. Collins then resumed his testimony and indicated that based on the amount of drugs recovered, they were not for personal use, and that the street value of the methamphetamine recovered was approximately $43,000 and the fentanyl was approximately $7,000.

¶ 43 On cross-examination, Collins testified that he had not observed who had hidden the drugs under the carpet; no fingerprints were identified connecting the defendant to the drugs; and he was unaware of how long the drugs had been in the vehicle. Collins testified that the drugs were not visible when he initially started his search. Collins agreed that if someone was sitting in the

13

passenger seat who did not notice the carpet defect, they would not have noticed the drugs. Collins additionally testified that after he handcuffed Beard, she asked what was happening, stated that she was "just going with him," and that "she didn't know anything about anything" found in the car. The State rested after the conclusion of Collins's testimony.

¶ 44    The defense made a motion for a judgment of acquittal and argued that the State had not proved beyond a reasonable doubt that both defendants knew that the drugs were in the vehicle. The defense argued that it was possible that Beard hid the drugs without informing the defendant, and that it was equally possible that the defendant hid the drugs without informing Beard. The State responded that both passengers had constructive possession of the drugs and had provided inconsistent and implausible stories. The circuit court denied the motion for acquittal.

¶ 45    Neither defendant testified. The defense rested without presenting additional evidence. After closing arguments, the jury deliberated, and the defendant was found guilty on all counts.

¶ 46    The defense filed a joint posttrial motion arguing against the sufficiency of the evidence presented and that the circuit court had erroneously denied the defendants' joint motion to suppress evidence. The circuit court denied the posttrial motion. The defendant was subsequently sentenced to two concurrent 15-year sentences in the IDOC for methamphetamine conspiracy and unlawful possession with intent to deliver a controlled substance as the remaining counts had merged into those two counts, followed by 18 months of MSR. This appeal followed.

¶ 47                                    II. ANALYSIS

¶ 48    On appeal, the defendant argues that the circuit court erred in denying the motion to suppress evidence where Collins lacked probable cause to search the vehicle, to open the postal envelope, and to search the defendant's person, thereby effectuating a seizure. The defendant also

14

argues that Collins improperly extended the traffic stop to conduct a drug interdiction investigation and that the State had failed to prove methamphetamine conspiracy beyond a reasonable doubt.

¶ 49    In addressing the matters related to the circuit court's motion to suppress decision, we apply a two-part standard of review where both questions of fact and law are presented. " 'Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether suppression is warranted is reviewed *de novo*.' " *People v. Redmond*, 2024 IL 129201, ¶ 21 (quoting *People v. Salamon*, 2022 IL 125722, ¶ 75). Additionally, we defer to the circuit court's credibility findings unless they are manifestly erroneous. *People v. Perez*, 288 Ill. App. 3d 1037, 1043 (1997). Evidence adduced at the suppression hearing and the trial may be considered on review. *People v. Richardson*, 234 Ill. 2d 233, 252 (2009).

¶ 50    The fourth amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. This constitutional guarantee is applicable to searches and seizures conducted by the states through the due process clause of the fourteenth amendment. U.S. Const., amend. XIV. "The fourth amendment provides the same level of protection as the search-and-seizure provision in the Illinois Constitution [citation]." *People v. Haycraft*, 349 Ill. App. 3d 416, 422-23 (2004). The fruits of a search or seizure may be suppressed if a search or seizure is in violation of the fourth amendment. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 22. The objective of the exclusionary rule is to safeguard all of us by deterring law enforcement from committing violations of the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 12 (1968) ("the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct").

15

¶ 51 Searches conducted without prior approval by a judge or magistrate are generally considered unreasonable under the fourth amendment with only a few specific and clearly defined exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). A warrantless search of an automobile is one such exception, due to the vehicle's transient nature and the challenge of obtaining a warrant before it can leave the jurisdiction. *People v. Hill*, 2020 IL 124595, ¶ 21. Probable cause is required to conduct a search of a vehicle without a search warrant. *Hill*, 2020 IL 124595, ¶ 22.

¶ 52 Probable cause is determined by the totality of the facts and circumstances known to the officer at the time of the search that would justify a reasonable person to believe that the vehicle contains contraband or evidence of criminal activity. *Hill*, 2020 IL 124595, ¶ 23. An action is "reasonable" under the fourth amendment, " 'as long as the circumstances, viewed objectively, justify [the] action' " regardless of the state of mind of the officer. *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). "[I]n deciding whether probable cause exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person." *People v. Jones*, 215 Ill. 2d 261, 274 (2005). For example, in *People v. Sinegal*, the police officer had probable cause to search a package based on circumstances known to him at the time, including apparent nervous behavior by the passengers, conflicting answers regarding the passengers' destination, and determining that the passengers had prior drug trafficking arrests. *People v. Sinegal*, 409 Ill. App. 3d 1130, 1137 (2011).

¶ 53 In this case, the police officer observed a jar of cannabis during the traffic stop, which led to the search of the vehicle. Since January 1, 2020, use and possession of cannabis has been legally permitted, with specific restrictions. *People v. Redmond*, 2024 IL 129201, ¶ 66. "Regardless of recent changes in the law legalizing possession of small amounts of cannabis, there are still, among

16

other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *People v. Molina*, 2022 IL App (4th) 220152, ¶ 43. We focus our review on the transportation of cannabis.

¶ 54    The Illinois Vehicle Code prohibits drivers and passengers from possessing cannabis within any area of any motor vehicle upon a highway in Illinois "except in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." 625 ILCS 5/11-502.15(b), (c) (West 2022). The Cannabis Regulation and Tax Act "does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for engaging in *** possessing cannabis *** in a vehicle not open to the public unless the cannabis is in a reasonably secured, sealed or resealable container and reasonably inaccessible while the vehicle is moving." 410 ILCS 705/10-35(a)(2)(D) (West 2022).

¶ 55    "The odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." *People v. Molina*, 2024 IL 129237, ¶ 61. *Molina* considered the packaging requirements under the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2022)) when reaching this decision. *Molina*, 2024 IL 129237, ¶ 58. According to the Cannabis Regulation and Tax Act, "[a]ny product containing cannabis shall be sold in a sealed, odor-proof, and child-resistant cannabis container consistent with current standards." 410 ILCS 705/55-21(c) (West 2022). Also, "[a]ll cannabis-infused products shall be individually wrapped or packaged at the original point of preparation." 410 ILCS 705/55-21(d) (West 2022). *Molina* considered that if an officer was able to smell raw cannabis in a vehicle stopped on the highway, then it is logical for that officer to

17

suspect that there is cannabis in the vehicle that is not properly contained. *Molina*, 2024 IL 129237, ¶ 61.

¶ 56 In this case, Collins pulled over the vehicle based on an observed speeding violation pursuant to section 11-601 of the Illinois Vehicle Code (625 ILCS 5/11-601 (West 2020)). The defendant concedes that Collins had reasonable suspicion to conduct an investigatory stop of the vehicle based on the speeding violation. Stopping a vehicle for a minor traffic violation alone, however, does not justify a warrantless search of a vehicle. *People v. Jones*, 215 Ill. 261, 271 (2005).

¶ 57 We note that Collins repeatedly stated that the probable cause search was based on the fact that the cannabis container had a "broken seal." A broken seal alone may not provide probable cause to search a vehicle if the cannabis was in a "resealable" container. See 410 ILCS 705/10-35(a)(2)(D) (West 2022).

¶ 58 Collins, however, testified at the suppression hearing that he was able to smell raw cannabis during the traffic stop and the circuit court considered Collins's testimony to be credible at the time of that hearing. The odor of raw cannabis provides a reason for an officer to suspect that cannabis has not been stored properly in a vehicle traveling on a highway. See *Molina*, 2024 IL 129237, ¶ 61. Regardless of the odor, Collins observed the cannabis container located in the center console of the vehicle. The container was not stored properly because it was not "reasonably inaccessible while the vehicle [was] moving." 410 ILCS 705/10-35(a)(2)(D) (West 2022). Collins testified that while the defendant was seated in the driver's seat, he was able to lift the "Virtue"-labeled container, presumably from a dispensary, from the center console area. Raw cannabis was visible inside of the container. The container was improperly kept within reach of the driver and

18

the passenger. Therefore, they both possessed cannabis that was not inaccessible, which was an "illegal way[ ] to transport it." See *Molina*, 2022 IL App (4th) 220152, ¶ 43.

¶ 59 The defendant argues that the State forfeited any claims related to the container being accessible. An issue not raised before the circuit court is generally forfeited on appeal. *People v. Cruz*, 2013 IL 113399, ¶ 20. However, evidence was presented during the suppression hearing of Collins' observations and actions which led to the search of the vehicle. Collins testified at the suppression hearing that he saw a jar of cannabis in the center console area of the vehicle where the defendant was a passenger. Collins testified to the totality of the facts and circumstances known to him at the time of the search, including the visible container. Objectively, Collins's actions were reasonable based on the accessibility of the cannabis by both the driver and the passenger. The defendant's claim of forfeiture is meritless.

¶ 60 We next turn to whether Collins had probable cause to perform a search of the envelope discovered under the floorboard carpeting during the search of the vehicle. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). "The scope of a warrantless search under the automobile exception 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.' " *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 34 (quoting *Ross*, 456 U.S. at 824) (a search of a glove box was justified under the automobile exception because the officers had probable cause to search the locked glove compartment for open containers of alcohol). Therefore, if an officer has probable cause to search a vehicle for cannabis, then the officer is permitted to search any container that could reasonably contain improperly stored cannabis. *People v. Rowell*, 2021 IL App (4th) 180819, ¶ 30.

¶ 61    Collins located a postal type of plastic packaging that had a weight to it under tampered floorboard carpeting on the passenger side of the vehicle. The defendant argues that the only basis for Collins to open the postal envelope was based on the belief that it contained evidence of the crime that the codefendants were improperly transporting legally purchased cannabis, and the envelope could not contain that evidence. Illinois dispensaries sell many forms of cannabis that could have been stored in the envelope located in an area accessible to the passenger. Even under the defendant's attempt to narrow the scope for Collins to conduct a search of the vehicle, it was reasonable for Collins to believe that the hidden package contained a form of cannabis accessible during transport.

¶ 62    Additionally, Collins testified that he had attended approximately a hundred hours of training that focused on drug interdiction. In addition to viewing an accessible jar of cannabis, Collins testified to other observations that led to a search of the vehicle and the envelope. The codefendants were traveling in a rental vehicle, with a significant amount of cash, and provided inconsistent and contradictory explanations of their travel plans. Collins additionally testified that Beard appeared stressed as she had exhibited signs of labored breathing. Collins's overall observations supported his probable cause determination when considering the totality of the circumstances. The search of the vehicle and envelope did not violate the protections of the fourth amendment.

¶ 63    The defendant additionally argues that the traffic stop was extended to conduct a drug interdiction investigation in violation of the fourth amendment. The State argues that the defendant forfeited this claim by failing to raise a constitutional challenge to the alleged prolonged nature of the traffic stop before the circuit court in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). *Enoch* determined that there are three types of claims which are not subject to

20

forfeiture for failing to file a posttrial motion: (1) constitutional issues properly raised at trial that may be raised later in a postconviction petition; (2) challenges to the sufficiency of the evidence; and (3) plain errors. *Enoch*, 122 Ill. 2d at 190. The constitutional-issue exception is primarily based on the interest of judicial economy. *People v. Cregan*, 2014 IL 113600, ¶ 18. Judicial economy favors addressing the issue on direct appeal rather than requiring that the defendant file a postconviction petition. *Cregan*, 2014 IL 113600, ¶ 18. Therefore, we apply the constitutional-issue exception to the forfeiture argument in this case. See *Cregan*, 2014 IL 113600, ¶ 20.

¶ 64    "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Under *Terry*, if a police officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime, the officer may briefly stop and detain the person to make reasonable inquiries, without first obtaining a warrant. *People v. Close*, 238 Ill. 2d 497, 505 (2010). A routine traffic stop, that is relatively brief, is similar to a *Terry* stop and not a formal arrest. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

¶ 65    The duration of a traffic stop is limited to the time required to complete the "mission" of the stop, that is, "to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354. An officer's "mission" typically involves inspecting the driver's license, determining whether there are outstanding warrants, and checking the automobile's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355. An officer may order the driver out of the vehicle, pending completion of the stop, without violating the protections of the fourth amendment. *People v. Gonzalez*, 184 Ill. 2d 402, 413-14 (1998). When police officers

21

stop vehicles for minor traffic violations, they may briefly detain the driver to request a driver's license and conduct initial inquiries. *Perez*, 288 Ill. App. 3d at 1044.

¶ 66    A pat-down search for weapons may be completed by an officer that reasonably believes a person is armed and dangerous. *People v. Moss*, 217 Ill. 2d 511, 519 (2005). An item that does not feel like a weapon or does not feel like it may contain a weapon may not be removed under *Terry*. *People v. Morales*, 221 Ill. App. 3d 13, 18 (1991). However, the discovery of an object, together with other suspicious circumstances, will amount to probable cause that the object is contraband or some other item subject to seizure. *People v. Morales*, 221 Ill. App. 3d 13, 18 (1991).

¶ 67    Additionally, "[t]he inevitable discovery doctrine is an exception to the rule that evidence obtained in violation of a defendant's constitutional rights must be excluded." *People v. Hubbard*, 341 Ill. App. 3d 911, 920 (2003). Evidence discovered that the State is able to prove would have inevitably been discovered irrespective of an improper search, is admissible. *Hubbard*, 341 Ill. App. 3d at 920. "[A]n arresting officer may conduct a 'full search of the [defendant's] person' incident to a lawful arrest, even if the officer is searching for contraband or other evidence that is not directly related to the crime for which the individual is being arrested." *People v. Carter*, 2011 IL App (3d) 090238, ¶ 14 (quoting *People v. Williams*, 28 Ill. App. 3d 189, 193 (1975)).

¶ 68    Collins initiated the stop at night on the side of the highway, and he testified that the pat-down was completed for safety purposes. Collins explained that he wanted to remove the defendant from being able to access any unknown dangerous objects inside the rental vehicle. At the time of the pat-down, the defendant volunteered that he was in possession of a large amount of cash to purchase a car. The recovered cash would have inevitably been discovered by a search incident to arrest, authorizing its admissibility at trial. Additionally, Collins wanted to avoid the traffic noise on the side of the highway and directed the defendant away from the oncoming traffic.

¶ 69    The body camera video depicted Collins performing an inquiry, or search of the licenses for the defendant and Beard, while the defendant was in the front seat of the patrol car. Collins asked a few questions related to the purpose of their trip and he responded to questions and statements made by the defendant. Collins acted reasonably when he completed the pat-down. Moreover, the stop was not prolonged by having a conversation inside of the patrol vehicle while making inquiries regarding the licenses and determining whether there were outstanding warrants. Based on the foregoing, the circuit court did not err in its decision to deny the defendant's joint motion to suppress evidence.

¶ 70    The defendant additionally argues on appeal that the State failed to prove the defendant's guilt for methamphetamine conspiracy beyond a reasonable doubt. The key question in considering a challenge to the sufficiency of the evidence is " 'whether, after viewing the evidence in the light most favorable to the [S]tate, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Hensley*, 354 Ill. App. 3d 224, 228 (2004) (quoting *People v. Milka*, 211 Ill. 2d 150, 178 (2004)). This standard of review applies whether the evidence is direct or circumstantial. *People v. Jackson*, 2020 IL 124112, ¶ 64. The fact finder has the responsibility to make reasonable inferences drawn from the evidence, weigh witness testimony, and gauge witness credibility. *Hensley*, 354 Ill. App. 3d at 228.

¶ 71    "A person engages in a methamphetamine conspiracy when:

> (1) the person intends to violate one or more provisions of this Act;
> (2) the person agrees with one or more persons to violate one or more provisions of this Act; and
> (3) the person or any party to the agreement commits an act in furtherance of the agreement." 720 ILCS 646/65(a) (West 2020).

23

The State also alleged that the defendant agreed to commit the underlying offense of unlawful possession methamphetamine with intent to deliver, in violation of section 55(a) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a) (West 2020)).

¶ 72    "To support a conviction for possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the narcotics and that the narcotics were in the defendant's immediate and exclusive control." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Where two or more people share immediate and exclusive control of contraband, they jointly possess it. *People v. Juarbe*, 318 Ill. App. 3d 1040, 1054 (2001).

¶ 73    Possession can be constructive or actual. *Tates*, 2016 IL App (1st) 140619, ¶ 19. Constructive possession exists when there is intent and capability to maintain control and dominion over a substance. *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002). Constructive possession and a defendant's intent to maintain exclusive control are typically established by circumstantial evidence where knowledge is inferred from surrounding circumstances and the defendant's actions. *McLaurin*, 331 Ill. App. 3d at 502-03. For example, "[h]iding drugs to avoid detection indicates an intent to exercise control over them." *McLaurin*, 331 Ill. App. 3d at 503.

¶ 74    Evidence of intent to deliver is also usually proven by circumstantial evidence. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). Factors to consider as probative of intent to deliver include, whether the quantity of methamphetamine in the defendant's possession is too large for personal consumption, the purity of the drug confiscated, possession of weapons, the possession of a large amount of cash, possession of drug paraphernalia, and how the substance is packaged. *Robinson*, 167 Ill. 2d at 408.

¶ 75    Evidence was presented at trial that the defendant was traveling with Beard with an envelope of methamphetamine and fentanyl hidden under the carpeting in the passenger area of a

24

rental vehicle. Evidence was presented that the rental car would have been thoroughly inspected according to company procedures prior to renting the vehicle. Collins testified to Beard's nervousness and that she had looked towards the area where the hidden envelope was concealed when she was questioned. The carpeting had been tampered with in order to hide the envelope of methamphetamine and fentanyl.

¶ 76    The jury could thus infer that after Beard rented the vehicle, she gained possession and control over the vehicle and the area that was tampered with in order to hide the envelope of methamphetamine and fentanyl. The defendant stipulated that 437.5 grams of methamphetamine was retrieved from the passenger area of the rental vehicle. Collins testified that the amount recovered exceeded an amount considered for personal use. The defendant had more than $5,000 in cash on his person. The jury was able to weigh the credibility of Collins and view the defendant's responses to Collins as well as Beard's denial of knowledge about the narcotics found in the vehicle. Sufficient evidence was presented for the jury to find the defendant guilty of methamphetamine conspiracy.

¶ 77                                    III. CONCLUSION

¶ 78    For the foregoing reasons, we affirm the judgment of Coles County.

¶ 79    Affirmed.