NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250521-U

NO. 4-25-0521

IN THE APPELLATE COURT

FILED
March 24, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Rock Island County |
| DeSHAWN L. HULL JR., | ) | No. 23CF856 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Frank R. Fuhr, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed defendant's conviction for unlawful possession of cannabis with intent to deliver where officers did not violate defendant's fourth amendment rights (U.S. Const., amend. IV) by opening locked suitcases in defendant's vehicle after defendant was pulled over for speeding and officers noticed burnt cannabis in the center console and a strong odor of burnt and raw cannabis in the vehicle.

¶ 2     After the State charged defendant, DeShawn L. Hull Jr., with unlawful possession with intent to deliver more than 5,000 grams of cannabis, a Class X felony (720 ILCS 550/5(g) (West 2022)), and various traffic offenses, defendant filed a motion to suppress evidence and quash arrest. The trial court denied the motion, and the case proceeded to a stipulated bench trial. Before the trial began, the State dismissed all but the unlawful possession with intent to deliver charge and reduced the amount of cannabis alleged in that charge to 2,000 to 5,000 grams, making it a Class 1 felony (720 ILCS 550/5(f) (West 2022)). After the stipulated bench trial, the court found

defendant guilty and sentenced him to 180 days in jail and 30 months' probation. Defendant appeals, arguing that the court improperly denied his motion to suppress. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On November 16, 2023, defendant was charged with unlawful possession of more than 5,000 grams of a substance containing cannabis with intent to deliver, a Class X felony (720 ILCS 550/5(g) (West 2022)). Defendant was also charged with the following traffic offenses: (1) no valid license/permit (625 ILCS 5/6-101 (West 2022)); (2) speeding (625 ILCS 5/11-601(b) (West 2022)); and (3) operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2022)). Later, the State added a new charge of cannabis trafficking, alleging that "defendant knowingly brought 2,500 or more grams [of] cannabis into the State of Illinois with the intent of delivering said cannabis in Illinois or any other state." 720 ILCS 550/5.1(a) (West 2022).

¶ 5                         A. Motion to Quash and Suppress

¶ 6        On April 25, 2024, defendant filed a motion to quash arrest and suppress evidence, arguing that the State violated his fourth amendment rights (U.S. Const., amend. IV). In June 2024, the trial court held a hearing on defendant's motion.

¶ 7        Defendant was the only witness to testify. He testified that he was pulled over for speeding on Interstate 88 in Rock Island County as he traveled from Chicago, Illinois, to his home in Cedar Rapids, Iowa. He acknowledged that the officers could smell cannabis in his vehicle because there was a cannabis "blunt" in plain view in the center console of his vehicle. Defendant acknowledged smoking cannabis in the vehicle. Defendant was removed from his vehicle and searched. Officers found $700 in defendant's pocket. Officers then thoroughly searched the vehicle. In the front seat, officers found a backpack with "a green leafy substance" inside a baggie.

Officers also found two locked suitcases: one in the back seat and one in the trunk.

¶ 8        Defendant testified the suitcases were not his and were already in the vehicle when he borrowed it. The suitcases both had nametags with defendant's name. The suitcases were locked. Defendant denied placing the locks on the suitcases and denied having keys to the locks. Officers proceeded to cut the locks off the suitcases and found a large amount of cannabis inside the suitcases.

¶ 9        Defendant argued that the officers did not have authority to unlock the suitcases they found in the vehicle. The trial court disagreed, citing *United States v. Ross*, 456 U.S. 798 (1982), for the proposition that "[o]nce the officers had probable cause to conduct an investigatory search of the car under the automobile exception to the warrant requirement, they had authority to search any container within the vehicle that may contain the contraband being searched for, in this case cannabis." Thus, the court denied defendant's motion. Defendant filed a motion to reconsider, which the court denied.

¶ 10                              B. Stipulated Bench Trial

¶ 11        On May 20, 2025, the State amended the intent to deliver charge in count I to a Class 1 felony by alleging that defendant had the intent to deliver between 2,000 and 5,000 grams of cannabis (720 ILCS 550/5(f) (West 2022)). The State dismissed the remaining charges against defendant, and the parties agreed to proceed by way of a stipulated bench trial. Defendant pled not guilty to the new charge.

¶ 12        The parties stipulated as follows:

> "1) That on 11/15/23 at approximately 9am, IL State Police Trooper Thomspon pulled over the vehicle the defendant was driving westbound on interstate 88 in Rock Island County for speeding 64mph in a 55mph zone and other

potential traffic violations.

2) Subsequent to the traffic stop, Trooper Thompson approached the vehicle to speak to the driver, later determined to be defendant ***. When doing so, Trooper Thompson detected a strong odor of both burnt and raw cannabis and observed what he believed to be a burnt cannabis blunt or cigar in a white cup in the cupholder of the vehicle. Defendant was the sole occupant of the vehicle.

3) Subsequent to these observations, defendant was removed from the vehicle and placed in the front seat of the Trooper's squad car. With the help of a backup officer, Trooper Isaacs, defendant's vehicle was thoroughly searched. During the search, a couple containers in the form of suitcases were forcibly opened and large amounts of suspected cannabis were located inside. All the cannabis, packaging and the suitcases as well as the vehicle were extensively photographed and documented. Defendant was then arrested for felony possession with intent to deliver cannabis and ultimately processed at the Rock Island County jail.

4) *** [T]he cannabis that was located during the vehicle search was sent to the IL State Police forensic lab at Morton IL for testing. The State would present the expert testimony of Jennifer MacRitchie, a forensic scientist at the lab, who would testify that she tested and weighed the cannabis recovered from defendant's vehicle and 2,709.9 grams of cannabis was positively identified through chemical testing. This amount of cannabis would satisfy the statute prohibiting possession with intent to deliver more than 2000 grams but less than 5000 grams of cannabis. *** [P]roper chain of custody of the cannabis was preserved from the time of the

initial seizure, through the lab testing and back to the IL State Police for purposes of trial such that all such cannabis, in the amount previously indicated, would be admitted against defendant in the State's case in chief.

5) *** [I]f called to testify in his own defense, defendant's testimony would be consistent with the testimony he gave at his motion to suppress hearing. Namely, that the containers found in the vehicle were already in the vehicle when he departed Chicago, IL early that morning and that he didn't have a key to the locks on the containers so could not open them to observe their contents before leaving for his return trip home. That he never gave consent for the vehicle search and no warrant for him, his vehicle or the suitcases was ever presented prior to the police opening the suitcases and his subsequent arrest and charges."

The trial court found defendant guilty based on the stipulated facts.

¶ 13    Defendant waived a presentence investigation, and the trial court sentenced him to 180 days in jail, day-for-day, with credit for time served, followed by 30 months' probation. As a condition of his probation, defendant was prohibited from consuming cannabis.

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    Defendant argues that the police violated his fourth amendment rights when they searched the locked suitcases inside the vehicle he was driving without a warrant or his consent.

¶ 17                        A. Standard for Motion to Suppress

¶ 18    When we review a motion to suppress, we apply a two-part standard. *People v. Salamon*, 2022 IL 125722, ¶ 75. "Factual findings by the trial court will be reversed only if they are against the manifest weight of the evidence, but the ultimate legal determination as to whether

suppression is warranted is reviewed *de novo*." *Salamon*, 2022 IL 125722, ¶ 75. Here, the facts are not in dispute, so we review *de novo* whether suppression was warranted.

¶ 19 The defendant bears the burden of proof in a motion to suppress evidence. 725 ILCS 5/114-12(b) (West 2022); *People v. Brooks*, 2017 IL 121413, ¶ 22. The defendant must make a *prima facie* showing that the evidence was obtained by an illegal search. *Brooks*, 2017 IL 121413, ¶ 22. "A *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress." *Brooks*, 2017 IL 121413, ¶ 22. If the defendant makes a *prima facie* showing that the evidence was obtained in an illegal search or seizure, the burden shifts to the State to provide evidence to counter the defendant's *prima facie* case. *Brooks*, 2017 IL 121413, ¶ 22. Nevertheless, the ultimate burden of proof remains with the defendant. *Brooks*, 2017 IL 121413, ¶ 22.

¶ 20 B. Fourth Amendment

¶ 21 The fourth amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ***." U.S. Const., amend. IV. The Illinois Constitution similarly provides: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches ***. No warrant shall issue without probable cause ***." Ill. Const. 1970, art. I, § 6. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

¶ 22 "One well-established exception is for searches of automobiles." *People v. Molina*, 2024 IL 129237, ¶ 20. "The automobile exception is justified because of an automobile's 'transient

- 6 -

nature,' which 'often renders it impracticable to secure a warrant before the automobile escapes the jurisdiction in which the warrant must be sought.' " *Molina*, 2024 IL 129237, ¶ 20 (quoting *People v. Hill*, 2020 IL 124595, ¶ 21). "Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994).

¶ 23                                                C. Probable Cause

¶ 24        Probable cause exists where the evidence known to the officer raises a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243 n.13. "Whether the necessary probability exists is governed by commonsense considerations that are factual and practical, rather than by technical rules." *People v. Manzo*, 2018 IL 122761, ¶ 30. "[P]robable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Hill*, 2020 IL 124595, ¶ 24. "Instead, it requires only that the facts available to the officer— including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability" that a search of the automobile will uncover contraband or evidence of criminal activity. *Hill*, 2020 IL 124595, ¶ 24.

¶ 25                           D. Changes in Illinois's Cannabis Law

¶ 26        Prior to 2019, it was illegal to possess cannabis in Illinois for recreational use. Then, in June 2019, the Illinois legislature enacted the Cannabis Regulation and Tax Act (Regulation Act) (410 ILCS 705/1-1 *et seq.* (West 2022)). As of 2020, "[p]ursuant to the Regulation Act, it is generally legal for an Illinois resident who is over the age of 21 to use cannabis and to possess up

to 30 grams of cannabis." *People v. Redmond*, 2024 IL 129201, ¶ 41; see 410 ILCS 705/10-5(a)(1) (West 2022); 410 ILCS 705/10-10(a)(1) (West 2022).

¶ 27　　　At the same time the legislature created the Regulation Act, the legislature made changes to the Illinois Vehicle Code to prohibit the use of cannabis on a highway and regulate how an individual may possess cannabis within a vehicle. *Redmond*, 2024 IL 129201, ¶ 43; 625 ILCS 5/11-502.15 (West 2022). The Vehicle Code provides: "No driver may use cannabis within the passenger area of any motor vehicle upon a highway in this State." 625 ILCS 5/11-502.15(a) (West 2022). The Vehicle Code also provides that "[n]o driver may possess cannabis within any area of any motor vehicle upon a highway in this State except in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible." 625 ILCS 5/11-502.15(b) (West 2022).

¶ 28　　　　　　　　　　　　E. Odor of Cannabis

¶ 29　　　In *Redmond*, our supreme court held that "the smell of burnt cannabis, standing alone, is insufficient to give an officer probable cause to search a vehicle." *Redmond*, 2024 IL 129201, ¶ 46. However, the supreme court adopted a different rule for raw cannabis. "[T]he odor of raw cannabis coming from a vehicle being operated on an Illinois highway, alone, is sufficient to provide police officers, who are trained and experienced in distinguishing between burnt and raw cannabis, with probable cause to perform a warrantless search of a vehicle." *Molina*, 2024 IL 129237, ¶ 61.

¶ 30　　　Here, the undisputed facts establish that defendant violated the Vehicle Code by using cannabis while driving and having cannabis accessible to him while driving. See 625 ILCS 5/11-502.15(a), (b) (West 2024). In addition to those violations, officers smelled a "strong odor" of "raw cannabis" emanating from his vehicle. Thus, they had probable cause to search defendant's

vehicle on that basis. See *Molina*, 2024 IL 129237, ¶ 61. However, that does not end our analysis. While officers had probable cause to search defendant's vehicle, defendant argues that the locked suitcases in the back seat and trunk of the vehicle did not fall within the scope of their search. We disagree.

¶ 31    "Illinois law clearly provides that if the officers had probable cause to search the vehicle for cannabis, they were justified in searching *any* containers that had a reasonable likelihood of containing cannabis." (Emphasis in original.) *People v. Rowell*, 2021 IL App (4th) 180819, ¶ 30; see *People v. Woolfolk*, 2025 IL App (5th) 230523, ¶¶ 57, 59 (envelope under floorboard carpeting could be searched because odor of raw cannabis gave police probable cause to "search any container that could reasonably contain improperly stored cannabis"); *People v. Weaver*, 2013 IL App (3d) 130054, ¶¶ 6, 32 (an officer's testimony that he smelled the "faint odor" of raw cannabis "was sufficient to furnish probable cause to search the trunk," including a duffel bag inside it); *People v. Wolsk*, 118 Ill. App. 3d 112, 120 (1983) (where police had probable cause to believe a vehicle contained contraband, they were entitled to search the car, "as well as any closed containers carried therein that might hold drugs or drug-related paraphernalia," including the interior compartment, trunk, and a suitcase).

¶ 32    The rule above can be traced to *Ross*, 456 U.S. at 825, where the United States Supreme Court stated: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." The United States Supreme Court reiterated that rule nearly 10 years later in *California v. Acevedo*, 500 U.S. 565, 580 (1991), stating, "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." Based on federal and Illinois precedent, the trial court did not err in denying

defendant's motion to suppress the cannabis found in the suitcases in his vehicle.

¶ 33          In reaching this conclusion, we reject the arguments made by defendant. First, defendant argues that the officers' search was unlawful because the officers did not have "probable cause to believe that there was an ongoing possession of cannabis *with intent to deliver*," the crime defendant was ultimately charged with and convicted of. (Emphasis in original.) Here, there is no question that police had probable cause to believe that defendant was storing cannabis in a noncompliant container because police smelled raw cannabis in defendant's car. See *Woolfolk*, 2025 IL App (5th) 230523, ¶ 57 ("The odor of raw cannabis provides a reason for an officer to suspect that cannabis has not been stored properly in a vehicle traveling on a highway."); *People v. Mallery*, 2023 IL App (4th) 220528, ¶ 42 ("[W]hen the odor of cannabis is detectable in a vehicle, it is 'almost certain' that there has been a violation of the Vehicle Code.") (quoting *People v. Molina*, 2022 IL App (4th) 220152, ¶ 44, *aff'd* 2024 IL 129237). Additionally, defendant admitted to smoking cannabis in the car and the officers observed partially smoked cannabis in the passenger area of the car, reinforcing that the police had probable cause to search the vehicle for cannabis. See *People v. Hall*, 2023 IL App (4th) 220209, ¶ 24 (stating that the odor of cannabis and the front seat passenger's admission to smoking cannabis created probable cause to search the vehicle).

¶ 34          No court has held that when there is probable cause to search a vehicle for cannabis, the police must somehow anticipate how much cannabis they will find and if it will be enough to charge the defendant with "intent to deliver" before their search even begins. Such a rule would be nonsensical, as it is impossible to determine from the odor alone the quantity of cannabis in a vehicle. See *Hall*, 2023 IL App (4th) 220209, ¶ 27. To have probable cause, police are not required to know what particular crime a defendant would eventually be charged with but only that there

was a "fair probability that contraband or evidence of *a* crime [would] be found." (Emphasis added.) *Gates*, 462 U.S. at 238. Here, defendant violated the law when he had partially smoked cannabis in his vehicle next to him, admitted to smoking marijuana while driving, and was driving a vehicle containing a strong odor of raw cannabis. All these conditions gave the officers probable cause to search defendant's vehicle, even though they did not learn until after their search that the vehicle contained over 2,700 grams of cannabis, enough to charge defendant with a Class 1 felony involving intent to deliver. See 720 ILCS 550/5(f) (West 2022).

¶ 35        Additionally, defendant argues that police needed independent probable cause to search each and every object in his vehicle, including the suitcases. As explained above, federal and Illinois law provide otherwise. According to the United States Supreme Court, "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *Ross*, 456 U.S. at 820-21. This court agreed in *Rowell*, 2021 IL App (4th) 180819, ¶¶ 30-31, finding that officers who smelled cannabis in the defendant's vehicle could search each and every object in the vehicle, including the trunk and bags found within it. Most recently, the Fifth District relied on *Rowell* and *Ross* in stating: "[I]f an officer has probable cause to search a vehicle for cannabis, then the officer is permitted to search any container that could reasonably contain improperly stored cannabis." *Woolfolk*, 2025 IL App (5th) 230523, ¶ 59. We refuse to depart from these well-established rules of law.

¶ 36        Defendant also argues that the suitcases constituted compliant storage containers within the meaning of the Vehicle Code. To be compliant, a storage container must be "secured, sealed or resealable, odor-proof, [and] child-resistant." 625 ILCS 5/11-502.15(c) (West 2022). The officers testified that they smelled a "strong odor" of raw cannabis in defendant's vehicle. That

testimony was sufficient to establish that the suitcases were not compliant because they were not odor-proof. See *Woolfolk*, 2025 IL App (5th) 230523, ¶ 57. Defendant, however, argues that the "strong odor" of raw cannabis may have come from the cannabis found in his backpack or the partially smoked cannabis in the console. However, we find no evidence to support these contentions. While partially smoked cannabis would likely carry an odor of burnt cannabis, it would likely not carry the odor of raw cannabis. Further, there was no testimony that once the backpack was removed from the vehicle, the "strong" odor of raw cannabis dissipated. Moreover, defendant never presented any evidence in the trial court that the suitcases were proper storage containers; therefore, he has forfeited that issue. See *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 72 ("It is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal."). Furthermore, defendant carried the burden of proving that his motion to suppress should be granted. To do so, he had to present facts establishing that the officers performed an unlawful search. Because defendant presented no evidence below that the suitcases were compliant containers, he failed to satisfy his burden of proving that the officers violated his rights by searching them.

¶ 37    Finally, defendant argues that it was the duty of the officers to establish that the scent of cannabis was specifically emanating from the suitcases. We disagree. The officers' observation that the vehicle smelled like raw cannabis was enough to justify their search of the vehicle and the suitcases within it. See *Molina*, 2024 IL 129237, ¶ 61; *Rowell*, 2021 Ill. App (4th) 180819, ¶ 31 ("[T]he smell of cannabis emanating from a vehicle was sufficient justification for the police to search it, including its trunk and bags in the passenger compartment."); see also *People v. Williams*, 2013 IL App (4th) 110857, ¶ 34 (an officer who detected a "strong odor of cannabis" coming from the interior of a vehicle had probable cause to search the driver, the interior

of the vehicle, including containers, and the defendant until he discovered the source of the odor). Further, at the hearing on the motion to suppress, the State did not have the burden of proving the search was lawful. Rather, defendant, as the party seeking suppression of the evidence, bore the burden of presenting facts establishing that the officers' search violated his rights. See *Brooks*, 2017 IL 121413, ¶ 22. Here, defendant failed to carry his burden of proof.

¶ 38 For all these reasons, the trial court properly denied defendant's motion to suppress evidence and quash arrest. Thus, we affirm defendant's conviction.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we affirm the trial court's judgment.

¶ 41 Affirmed.